
October 24, 2008

Dear

As you know, our recently announced merger with Bank of America represents a great opportunity for both companies, as well as for all our employees and clients. In recognition of this opportunity going forward and your contribution to Merrill Lynch, upon the closing of the merger you will participate in the Advisor Transition Program described below.

Your participation has been designed with reference to your 2008 September 12th year-to-date production which has been annualized as shown below.

2008 PCs (annualized) =

**Advisor Transition Program Awards**
    Loan repayable with interest over 7 years:
    PC Growth Award: Maximum

**Program Components**

**Loan** - As soon as practicable after the Closing Date, you will be entitled to a loan evidenced by a promissory note equal to the amount listed above. The term of the loan will be 7 years and the installments including interest will be due monthly. The actual interest rate will be set in the month the loan is made.

**Monthly Service Bonus** - Every month you will receive a Monthly Service Bonus. For your convenience the payments will coincide with the dates in the Promissory Note. Please note that the payments, like any other compensation award, will be subject to tax withholding. Details of your Monthly Service Bonus will be set forth in the Advisor Transition Program Agreement. For illustration purposes, your Monthly Service Bonus payable each month during seven years will be no less than    . The actual amount will be set upon closing.

**PC Growth Award** - The PC Growth Award will be calculated based on the cumulative annual incremental production growth in each year 2009, 2010, and 2011. Growth each year will be compared to the prior full year baseline production credits. Baseline production credits may be adjusted on an annual basis to reflect reallocations of production credits in accordance with normal policies. The PC Growth Award will equal the cumulative incremental production credits - up to a maximum amount listed above.

Provided you remain continuously employed by the Company or any of its affiliates, the PC Growth Award will be granted on January 1, 2012 and be payable in the form of a Long Term Cash Award. This will vest and be payable in 4 equal annual increments beginning with the first vesting date of January 1, 2013, provided you remain employed by the Company or its affiliates on each vesting date. The amount will be calculated to include interest at an annual rate equal to the one year Treasury Bill rate set at the time of your award.

The detailed Advisor Transition Program Agreement will contain specific terms of your award, including vesting and forfeiture provisions, and will in all events be the governing document for your award.

**Finalization of Advisor Transition Program**

This Advisor Transition Program will be finalized and shall become effective only if the merger closes and you are employed in good standing as of the Closing Date. On the current screen (above) you can print the Agreement and related documents.

**You will need to electronically sign the Agreement by November 14, 2008 in order to receive your award.**
Prior to receiving a loan pursuant to the Advisor Transition Program, you will also have to electronically sign a promissory note in the form included in the email link to the website. Prior to the Closing Date, we will provide you with the final form of promissory note, which you will need to electronically sign by a specific date in order to receive your loan.

On a personal note, we are very proud of our association with Bank of America and hope, when this transaction is complete, you will be excited to take on the opportunities and responsibilities that come with such an association as well.

*Bob*

Bob McCann
Vice Chairman & President
Global Wealth Management

*[signature]*

Dan Sontag
Senior Vice President
GWM Americas

## ADVISOR TRANSITION PROGRAM AWARD

| Print Award Confirmation Page | Print FINAL APPROVED Advisor Transition Program Agreement | Print FINAL APPROVED Advisor Transition Program Addendum | Print FINAL APPROVED Promissory Note | Print FINAL Amortization Table |

FA Name:
PC Quintile:
2008 Sept 12th
Annualized PCs:

### Advisor Transition Program Award

Promissory Note:
PC Growth Award:
Total Award:
Monthly Service Award Payment:

Agreement Status: APPROVED
　　　　　　has APPROVED this agreement on:
　　Date:　　　Time:
Amendment Status: APPROVED
　　　　　　has APPROVED this Amendment on:
　　Date:　　　Time:
Promissory Note Status: APPROVED
　　　　　　has APPROVED this Promissory Note on:
　　Date:　　　Time:
　　Deposit into ML Account Number:

# ADVISOR TRANSITION PROGRAM AWARD

AWARD LETTER | DEAL SUMMARY | CONFIRM | AMORTIZATION | PROMISSORY NOTE

RESOURCES

**FA Name:**
**PC Quintile:**
**2008 Ann PCs:**

Print Deal Summary

          Promissory Note    PC Growth Award *(Maximum)*    Total Award

**Calculated Award**

**Agreement Status: APPROVED**

    has APPROVED this agreement on:

  Date:

  Time:

BY USING THIS AGREEMENT APPROVAL WEBSITE AND BY CONFIRMING AND SUBMITTING YOUR EMPLOYEE ID, YOU REPRESENT AND WARRANT THAT
  (I) YOU ARE USING THE SITE SOLELY ON BEHALF OF YOURSELF;
  (II) YOU SHALL TREAT ALL ASPECTS OF THE SITE AND YOUR AGREEMENT AS CONFIDENTIAL.

## ADVISOR TRANSITION PROGRAM AGREEMENT

This is an Agreement, dated as of October 23, 2008, between MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED ("Merrill Lynch") and

WHEREAS, Merrill Lynch & Co., Inc., a Delaware corporation, and Bank of America Corporation, a Delaware corporation ("Bank of America"), have entered into an Agreement and Plan of Merger, dated as of September 15, 2008 (the "Merger Agreement");

WHEREAS,            is employed as a Financial Advisor at Merrill Lynch; and

WHEREAS, Merrill Lynch recognizes that it is beneficial to secure the continued service of Financial Advisors following the consummation of the transactions contemplated by the Merger Agreement.

NOW, THEREFORE, the parties agree as follows:

1. Advisor Transition Program. In consideration of the services to be rendered by            and upon the parties' recognition and acknowledgment of the value of continued employment of            , Merrill Lynch shall make compensation payments to            as follows:

(a) Service Award Payment.

(i)            shall be entitled to monthly compensation payments in an amount not less than            during each month from the first calendar month following the Closing (as defined in the Merger Agreement) through the month containing the seventh anniversary of the Closing ("Service Payments"), with the exact amount of the Service Payments to be provided to you within 30 days following the Closing Date (as defined in the Merger Agreement). Service Payments are not eligible for computation of benefits (usually known as "non-eligible compensation").            shall cease to be entitled to and shall not receive any additional Service Payments upon the termination of his/her employment for any reason except as provided in 1(a)(ii) below.

(ii) In the event that            employment is terminated by Merrill Lynch by reason of death or Disability (as long term disability is defined in the disability plan applicable to            at the time of disability), Merrill Lynch shall provide            or his/her estate with a cash lump sum in an amount equal to the Service Payments that would have been made after the date of termination of his/her employment through the seventh anniversary of the Closing, which amount shall first be paid by Merrill Lynch to satisfy any outstanding amount            owes Bank of America and its affiliates, including Merrill Lynch (the "Bank of America Group"), pursuant to the loan made to            in connection with the consummation of the transactions contemplated by the Merger Agreement, and the remainder of which shall be paid to            or his/her estate. Such lump sum shall be paid as soon as practicable after the date of            death or Disability, but in no event later than March 15 of the year after the calendar year in which the termination due to death or Disability occurs.

has APPROVED this agreement on:

Date:
Time:

## ADVISOR TRANSITION PROGRAM AGREEMENT

(b) PC Growth Award.           shall also be eligible to receive a PC growth award on January 1, 2012 (the "PC Growth Award"), provided           remains employed by Merrill Lynch on that date. The PC Growth Award shall be calculated based on the cumulative incremental production growth for the years 2009, 2010, and 2011 (production credits as calculated in accordance with Merrill Lynch's current policies and procedures, as they may be amended from time to time). The growth in production over the three year period shall be the sum of the difference (positive or negative) between (x) the production credits for each of the years 2009, 2010 and 2011 and (y) the baseline production credits for the applicable prior year, as may be adjusted during the year to reflect reallocation of production credits in accordance with Merrill Lynch's policies and procedures in effect from time to time. The PC Growth Award shall equal the cumulative incremental production credits - up to a maximum of           (the "PC Growth Award Payment"). The PC Growth Award Payment shall be paid in cash on a deferred basis, subject to vesting, in four equal annual increments, commencing on January 1, 2013. These four equal payments will include an interest factor set at the time of the award, which will be the one-year T-Bill rate on the date of the award. (For the avoidance of doubt, an example of how this calculation will work is attached as Exhibit A to this Agreement.) Any portion of the PC Growth Award Payment that vests shall be paid to           within forty-five days of the applicable vesting date. In the event that           employment terminates for any reason other than death or Disability, amounts that are not yet vested will be forfeited in their entirety. In the event           employment is terminated as a result of death or Disability, any portion of the Growth Award Payment not already vested, shall vest in full and be paid within forty-five days of           death or Disability.

2. In consideration of the rights and benefits provided to           under this Agreement,           hereby waives his/her right to receive any payments or benefits on account of termination of his/her employment at any future date for "Good Reason" under any plan or agreement covering           as of the date hereof, including without limitation any payments or benefits that would otherwise become due in connection with a termination for "Good Reason" under Section 9 of the Financial Advisor Capital Accumulation Award Plan ("FACAAP"), Section 8 of the WealthBuilder Account Plan ("WealthBuilder Plan") and Section 7 of the Merrill Lynch Growth Award Plan ("Growth Plan") and the "Change in Control" provisions under any other Merrill Lynch equity compensation plan.           releases and discharges the Bank of America Group from any claims, whether known or unknown,           may have under the "Good Reason" clause under any such plan or agreement, including without limitation the FACAAP, WealthBuilder Plan, Growth Plan and any other Merrill Lynch equity compensation plan in which           participates.

3.           agrees that all customer information, whether in original or copied form, is confidential and proprietary to the Bank of America Group.           agrees not to disclose this information to any third party, including competitors of the Bank of America Group, at any time during           employment with Merrill Lynch, except for the purposes of conducting business on behalf of Merrill Lynch, or at any time after termination. Upon termination of his/her employment,           will immediately return all customer information to the Bank of America Group and will relinquish access to, possession of, and control over any such information in any form.

4. At all times during           employment and for a period of one year following the termination of employment with Merrill Lynch for any reason,           agrees not to recruit or solicit, either directly or indirectly, any Bank of America Group employee or employees to resign from the Bank of America Group or to join           or his/her new firm.

5. In the event that           breaches, or the Bank of America Group reasonably anticipates that           is about to breach, any of the covenants of paragraphs 3 or 4,           agrees and recognizes that the Bank of America Group will suffer immediate and irreparable harm and that money damages will not be adequate to compensate the Bank of America Group or to protect and preserve the status quo. Therefore,           AGREES THAT THE BANK OF AMERICA GROUP MAY OBTAIN A TEMPORARY RESTRAINING ORDER, WITH OR WITHOUT NOTICE, and A PRELIMINARY and PERMANENT INJUNCTION, ordering:

**           has APPROVED this agreement on:**

Date:
Time:

## ADVISOR TRANSITION PROGRAM AGREEMENT

(a) that               immediately return to the Bank of America Group all customer information and records, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated, compiled, or stored in any way whatsoever, and that               be enjoined and restrained from using or disclosing all such information and records; and

(b) that, for a period of one year following termination of his/her employment,               be enjoined and restrained from recruiting or soliciting, either directly or indirectly, any Bank of America Group employee or employees to resign from the Bank of America Group or to join          or          new employer.

6.          promises to pay and indemnify the Bank of America Group for all expenses, including attorneys' fees and costs, incurred by the Bank of America Group if it is successful in enforcing any of its rights under this Agreement.

7. All payments hereunder will be subject to required withholding for federal, state and local taxes.

8. Merrill Lynch's rights under this Agreement shall be freely assignable by Merrill Lynch and shall inure to the benefit of Merrill Lynch's successors and assigns, affiliated entities, and any current or future party-in-interest.

9. The terms of this Agreement shall be in full force and effect at all times during               employment and shall survive the termination of his/her employment. In addition, nothing herein is a promise of employment for a fixed term or otherwise modifies the at-will status of          employment.          shall be employed by Merrill Lynch on an at-will basis and nothing herein shall be construed as a contract of employment for a definite period of time or term.

10. In the event          changes employment within the securities industry or otherwise becomes employed in competition with the Bank of America Group,

(a) agrees to advise his/her new employer regarding the existence of this Agreement and the terms contained herein;

(b) agrees to provide a copy of this Agreement to his/her new employer prior to               acceptance of employment with said employer; and

(c) authorizes Merrill Lynch to provide a copy of this Agreement to          new employer.

11. This Agreement constitutes the sole agreement between the parties as to the subject matter hereof and          represents that in executing this Agreement,          has not relied upon any statement, promise or representation not set forth herein.

12.          and the Bank of America Group agree that this Agreement shall be governed by the laws of the State of New York, without regard to principles of choice of law thereof. The undersigned agree that any actions arising out of or relating to the Agreement shall be brought solely in the Supreme Court of the State of New York in New York County to the extent that such disputes are not arbitrable under the rules of Financial Industry Regulatory Authority ("FINRA") and all actions concerning such arbitration, including any action to confirm or vacate any arbitration award, shall be brought exclusively in the Supreme Court of the State of New York, New York County. The undersigned

**has APPROVED this agreement on:**

**Date:**

**Time:**

## ADVISOR TRANSITION PROGRAM AGREEMENT

(a) submit to personal jurisdiction in the Supreme Court of the State of New York in any action or proceeding arising out of or relating to this Agreement or relating to any arbitration concerning this Agreement,

(b) waive any claim of inconvenient forum or other challenge to venue in such court,

(c) agree not to bring any action or proceeding arising out of our relating to this Agreement or any arbitration concerning this Agreement in any other court, and

(d) waive any right to a trial by jury with respect to any action or proceeding arising out of or relating to this Agreement.

13. No previous waiver and no failure or delay by Bank of America Group in acting with respect to the terms of this Agreement shall constitute a waiver of any breach, default or failure of condition under this Agreement or the obligations secured thereby. A waiver or modification of any term of this Agreement or of any of the obligations secured thereby must be made in writing and signed by a duly authorized officer of Merrill Lynch and shall be limited to the express terms of such waiver or modification.           may not rely on any oral waivers or modifications and no such oral waiver or modification shall be binding on Bank of America Group or otherwise effective.

14. All payments and awards under the Advisor Transition Program are contingent upon consummation of the transactions contemplated by the Merger Agreement. This Agreement shall be null and void in the event that the transactions contemplated by the Merger Agreement are not consummated by March 31, 2009.

15.           must accept this Agreement by November 14, 2008, in order to receive awards pursuant to this Agreement. This Agreement shall be null and void in the event that           does not accept this Agreement by November 14, 2008.

16.           HAS READ AND REVIEWED THIS ADVISOR TRANSITION PROGRAM AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY.           FULLY UNDERSTANDS THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM. In selecting the acceptance icon by following the instructions provided with this Agreement,           acknowledges that this Agreement has been duly executed and delivered by the parties set forth below on the date first above written.

**           has APPROVED this agreement on:**

**Date:**

**Time:**

## ADVISOR TRANSITION PROGRAM AGREEMENT

**EXHIBIT A**

### PC Growth Award Example

The PC Growth Award will be calculated based on the cumulative annual incremental production growth in each year 2009, 2010, and 2011. Growth each year will be compared to the prior full year baseline production credits. Baseline production credits may be adjusted on an annual basis to reflect reallocations of production credits in accordance with normal policies. The PC Growth Award will equal the cumulative incremental production credits - up to the maximum listed for each FA.

Provided the FA remains continuously employed by the Company or any of its affiliates, the PC Growth Award will be granted on January 1, 2012 and be payable in the form of a Long Term Cash Award. This will vest and be payable in 4 equal annual increments beginning with the first vesting date of January 1, 2013, provided the FA remains employed by the Company or its affiliates on each vesting date. The amount will be calculated to include interest at an annual rate equal to the one year Treasury Bill rate set at the time of the award.

Example using a 3% rate as the 1 year T-bill at time of award:

Maximum growth award of $250,000
2008 PCs 1,000,000
2009 PCs 1,080,000
2010 PCs 1,150,000
2011 PCs 1,250,000

This example assumes no adjustments of baselines from year to year.

Cumulative growth for the period would be 250,000 (80,000 + 70,000 + 100,000), resulting in the maximum award of $250,000.

If the award is $250,000, the annual cash payments would be calculated as follows:

Award is payable in 4 equal installments including interest at an annual 3% rate.

| Year | Amount  | Applied Interest | Interest Applied |                        |
|------|---------|------------------|------------------|------------------------|
| 1    | $62,500 | x 3%             | = $1,875.00      |                        |
| 2    | $62,500 | x 6%             | = $3,750.00      |                        |
| 3    | $62,500 | x 9%             | = $5,625.00      |                        |
| 4    | $62,500 | x 12%            | = $7,500.00      | which totals $18,750   |

Notional Award + Calculated Interest = Total Cash Award
$250,000 + $18,750 = $268,750

Paid out in 4 equal installments of $67,187.50

                                            has APPROVED this agreement on:

**Date:**

**Time:**

## ADVISOR TRANSITION PROGRAM AGREEMENT AMENDMENT

AMENDMENT AGREEMENT, dated November 7, 2008, to the advisor transition program agreement, dated as of October 23, 2008 (the "Transition Agreement"), between MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED ("Merrill Lynch") and

WHEREAS, Merrill Lynch recognizes that it is beneficial to amend the Transition Agreement; and

WHEREAS,          desires to amend the Transition Agreement.

NOW, THEREFORE, the parties agree as follows:

1. Section 1(a) of the Transition Agreement is hereby amended with the addition of the following sections as Sections 1(a)(iii) and 1(a)(iv):

"(iii) Notwithstanding anything in this Section 1(a) to the contrary, in the event that          is or becomes eligible to participate in the Merrill Lynch Client Transition Program (the "CTP") and          terminates his/her employment as a Financial Advisor after the third anniversary of the Closing and elects to participate in the CTP,          shall continue to receive Service Payments through the month containing the seventh anniversary of the Closing so long as          continues to participate in the CTP.          shall cease to be entitled to and shall not receive any additional Service Payments upon          ceasing to participate in the CTP.

(iv) Notwithstanding anything in this Section 1(a) to the contrary, in the event that          employment is terminated by Merrill Lynch without Cause (as defined below) or as a result of a Relocation Termination (as defined below), Merrill Lynch shall provide          with a cash lump sum in an amount equal to the Service Payments that would have been made after the date of termination of his/her employment through the seventh anniversary of the Closing, which amount shall first be paid by Merrill Lynch to satisfy any outstanding amount          owes the Bank of America Group, pursuant to the loan made to          in connection with the consummation of the transactions contemplated by the Merger Agreement, and the remainder of which shall be paid to          Such lump sum shall be paid as soon as practicable after the date of          termination without Cause or Relocation Termination, but in no event more than 60 days following the date of          termination without Cause or Relocation Termination. For the purposes of this Agreement, "Cause" shall mean the following:

(a) a violation of federal securities laws, rules or regulations; (b) a violation of any rules or regulations of any regulatory or self-regulatory organization; (c) a violation, as reasonably determined by Merrill Lynch management, of Merrill Lynch's rules, regulations, policies, practices, directions and/or procedures; (d) criminal conduct that could either result in          statutory disqualification or could reasonably result in harm to Merrill Lynch or Merrill Lynch's reputation, as reasonably determined by Merrill Lynch management; (e) a suspension, bar, or limitation on          activities for Merrill Lynch by any regulatory or self-regulatory organization; (f) a violation of Merrill Lynch's policies against discrimination and harassment; (g) a failure to maintain license(s) and required registration(s); (h) dishonesty in connection with          employment as a Merrill Lynch Financial Advisor; or (i) a failure to fulfill or to meet any financial obligations that exist between          and Merrill Lynch for a period of four consecutive months. Merrill Lynch's determination of the existence of "Cause" will be made in good faith and will be reasonable under the circumstances. As used herein, the word "harm" does not include harm that is so speculative or is so minor that it is not reasonably likely to have any perceptible effect on Merrill Lynch, its employees, customers or reputation. Merrill Lynch agrees to provide          with notice, an opportunity to respond and a fifteen (15) day period to cure to the extent curable, provided that this opportunity to respond will not preclude Merrill Lynch from placing his/her on leave pending his/her response. In the event of the Closing, references above to Merrill Lynch will include Bank of America."

has APPROVED this agreement on:

Date:
Time:

## ADVISOR TRANSITION PROGRAM AGREEMENT AMENDMENT

2. Section 1(b) of the Transition Agreement is hereby renumbered Section 1(b)(i) and the following sections are hereby added as Sections 1(b)(ii) and 1(b)(iii) to the end of Section 1(b):

"(ii) Notwithstanding anything in this Section 1(b) to the contrary, in the event that            is or becomes eligible to participate in the CTP and            terminates his/her employment as a Financial Advisor after the third anniversary of the Closing and elects to participate in the CTP, the PC Growth Award shall continue to vest and be payable on the same schedule as if            continued his/her employment as a Financial Advisor so long as            continues to participate in the CTP. If            ceases to participate in the CTP prior to receiving his/her entire PC Growth Award, any unpaid portion of the PC Growth Award shall be forfeited.

(iii) Notwithstanding anything in this Section 1(b) to the contrary, in the event that            employment is terminated by Merrill Lynch without Cause or as a result of a Relocation Termination, the PC Growth Award shall continue to vest and be payable on the same schedule as if            continued to be employed through the date of the final PC Growth Award Payment, subject to            continued compliance with his/her obligations under the Agreement and any other restrictive covenant agreement with Merrill Lynch."

3. Section 2 of the Transition Agreement is hereby deleted and replaced in its entirety by the following:

"2. In consideration of the rights and benefits provided to            under this Agreement,            hereby waives his/her right to receive any payments or benefits on account of termination of his/her employment at any future date for "Good Reason" under any plan or agreement covering            , including without limitation any payments or benefits that would otherwise become due in connection with a termination for "Good Reason" under Section 9 of the Financial Advisor Capital Accumulation Award Plan ("FACAAP"), Section 8 of the WealthBuilder Account Plan ("WealthBuilder Plan") and Section 7 of the Merrill Lynch Growth Award Plan ("Growth Plan") and the "Change in Control" provisions under any other Merrill Lynch equity compensation plan covering            as of the date hereof (collectively with the FACAAP, the Wealthbuilder Plan and the Growth Plan, the "Applicable Plans"); provided, however that            shall maintain his/her right to receive any payments or benefits on account of termination of his/her employment at any future date for "Good Reason" pursuant to any of the Applicable Plans if            resigns following the relocation of the office of Merrill Lynch at which            was employed at the time of the Closing Date (the "Closing Date Location") to a location more than fifty miles away from the Closing Date Location, unless            is offered the opportunity to continue his/her employment at a new location that is within fifty miles of the Closing Date Location (a "Relocation Termination"). Except as set forth in the proviso above,            releases and discharges the Bank of America Group from any claims, whether known or unknown, may have under the "Good Reason" clause under any Applicable Plan, including without limitation the FACAAP, WealthBuilder Plan, Growth Plan and any other Merrill Lynch equity compensation plan in which            participates."

4. Section 3 of the Transition Agreement is hereby amended with the addition of the following sentences to the end of Section 3:

"Notwithstanding the foregoing, to the extent that this Section 3 conflicts with the provisions relating to the use of client information set forth in the "Protocol for Broker Recruiting" (the "Protocol"), the terms of the Protocol shall prevail, provided that            complies with all restrictions and requirements set forth in the Protocol. Furthermore, Merrill Lynch agrees that while you are receiving payments pursuant to this Agreement, you will continue to have the benefits and responsibilities of the Protocol."

5. Section 6 of the Transition Agreement is hereby deleted in its entirety and replaced by the following:

"6.            and the Bank of America Group each agree to pay and indemnify the other party for all expenses, including attorneys' fees and costs, incurred by the other party if it is successful in enforcing any of its rights under this Agreement."

6. Section 12 of the Transition Agreement is hereby deleted in its entirety and replaced by the following:

"12.            and the Bank of America Group agree that this Agreement shall be governed by the laws of the State of New York, without regard to principles of choice of law thereof.            and the Bank of America Group also agree to waive any right to a trial by jury with respect to any action or proceeding arising out of or relating to this Agreement."

7. All of the other provisions of the Transition Agreement that are not modified hereunder shall remain in full force and effect.

In selecting the acceptance icon by following the instructions provided with this Amendment Agreement, acknowledges that this Amendment Agreement has been duly executed and delivered by the parties set forth below on the date first above written.

**has APPROVED this agreement on:**

**Date:**
**Time:**

## PROMISSORY NOTE ("NOTE")

FOR VALUE RECEIVED, the undersigned,          hereby unconditionally promises to pay to the order of Merrill Lynch International Finance, Inc. or to the legal holder of this Note at the time of payment (the "Lender"), the principal sum of      in lawful money of the United States of America, with interest at the rate of 3.0% .

This Note is subject to the following further terms and conditions:

Section 1. Mandatory Amortization. The sum of $     shall be due and payable each month by the undersigned to the Lender or legal holder of this Note pursuant to the attached loan schedule, which is incorporated herein by reference. For the convenience of the undersigned, such amount shall be deducted from the undersigned's compensation from Merrill Lynch, Pierce, Fenner & Smith Incorporated, a Delaware corporation ("Merrill Lynch") at the time compensation is paid during each month from January 2009 through December 2015. For purposes of this Note, "compensation" shall include, but not be limited to, incentive compensation, transition compensation and/or bonuses, but does not include salary paid to the undersigned by Merrill Lynch.

By signing this Note, the undersigned explicitly authorizes Merrill Lynch to deduct the above amount from compensation on a monthly basis, as long as the loan remains unpaid. The undersigned acknowledges that Merrill Lynch will make these deductions solely to facilitate the payment of interest and principal on this Note and that these deductions are a benefit to the undersigned. Should the combined net after-tax amount of the undersigned's compensation for any month be an amount less than $     , then the Lender may recover, without limitation, any deficiency from any account held at Merrill Lynch by the undersigned alone or jointly with another (including, but not limited to, the undersigned's Cash Management Account), and/or from any compensation, credits, or property of the undersigned that is/are in the possession or control of Merrill Lynch for any reason (except that in no event shall any amounts be deducted from the undersigned's salary). Additionally, the undersigned understands and agrees that any deficiency outstanding at the end of any month shall be due and payable and be deducted from any subsequent compensation and as set forth elsewhere in this Note, Lender is not limited to recovering amounts owed from such compensation, but rather all amounts owed are full recourse obligations of the undersigned.

Section 2. Mandatory Prepayment on Termination of Employment/

Failure to Pay or Insolvency. Notwithstanding anything to the contrary contained herein, all outstanding principal and accrued but unpaid interest on this Note shall become due and immediately payable if (a) the undersigned's employment with Merrill Lynch is terminated for any reason; (b) the undersigned fails to make any payment of principal and interest on or before the due date; or (c) the undersigned becomes insolvent or files for bankruptcy.

Section 3. Prepayment at Option of the Undersigned. The undersigned may, at his/her option and upon no less than ten business days notice to the Lender, or to the legal holder of this Note, prepay this Note in whole or in part at any time or from time to time without penalty or premium in lawful money of the United States. Any partial prepayment shall be applied first to accrued and unpaid interest hereon and then to the unpaid principal hereof.

**has APPROVED this agreement on:**

**Date:**

**Time:**

## PROMISSORY NOTE ("NOTE")

Section 4. Payment. All payments and prepayments of principal of and interest on this Note shall be made to the Lender or its order in lawful money of the United States of America. In the event the undersigned fails to timely make any payments due and owing under the Note, the accrued and unpaid interest hereunder shall thereafter bear the same rate of interest as the principal hereunder, but in no event shall interest be charged that would violate any applicable usury law. The undersigned hereby expressly waives presentment and demand for payment, protest, notice of dishonor and all other demands and notices of any kind at such time as any payments are due under this Note. The undersigned agrees to pay all costs of collection, including reasonable attorneys' fees incurred by the holder in the enforcement of this Note.

Section 5. Nature of Obligations. This Note is a full recourse note against the undersigned. The undersigned shall be personally liable for full payment of the unpaid principal balance of this Note and accrued interest hereunder. No provision of this Note shall alter or impair the obligation of the undersigned, which obligation is absolute and unconditional, to pay the outstanding principal balance and accrued interest owing under this Note at the time, and in the manner set forth herein.

Section 6. Offsets. To the extent permitted by law, the Lender shall be entitled to apply as an offset against the undersigned's repayment obligations hereunder, if such obligations are not satisfied in full when due, any other amounts owed by the Lender or any of its affiliates to the undersigned.

Section 7. Miscellaneous.

(a) The provisions of this Note shall be governed by and construed in accordance with the laws of the State of New York, without reference to the principles of choice of law thereof. The undersigned agrees that any actions regarding the Note, including actions to recover amounts due under this Note, shall be brought solely in the Supreme Court of the State of New York in New York County . The undersigned (a) submits to personal jurisdiction in the Supreme Court of the State of New York in any action or proceeding arising out of this Note, (b) waives any claim of inconvenient forum or other challenge to venue in such court, (c) agrees not to bring any action or proceeding arising out of our relating to this Note in any other court, and (d) waives any right to a trial by jury with respect to any action or proceeding arising out of or relating to the Note.

(b) No previous waiver and no failure or delay by the Lender or the undersigned in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note or the obligations secured thereby. A waiver or modification of any term of this Note or of any of the obligations secured thereby must be made in writing and signed by a duly authorized officer of the Lender and shall be limited to the express terms of such waiver or modification. Undersigned may not rely on any oral waivers or modifications and no such oral waiver or modification shall be binding on Lender or otherwise effective.

(c) All notices and other communications hereunder shall be in writing and will be deemed to have been duly given if delivered or mailed.

**has APPROVED this agreement on:**

Date:

Time:

## PROMISSORY NOTE ("NOTE")

(d) The headings contained in this Note are for reference purposes only and shall not affect in any way the meaning or interpretation of the provisions hereof.

(e) The Lender may assign any or all of its rights, obligations and interests hereunder to any party without the consent of the undersigned. The undersigned shall not have the right to assign any of his/her rights, obligations or interests hereunder.

(f) This Note contains the complete understanding between the undersigned and the Lender relating to the matters contained herein and supersedes all prior oral, written and all contemporaneous oral negotiations, commitments and understandings between and among the Lender and the undersigned. The undersigned did not rely on any statements, promises or representations made by the Lender or any other party in entering into this Note.

**has APPROVED this agreement on:**

Date:

Time:

## Advisor Transition Program Award Amortization Schedule

| Payment Number | Initial Promissory Note Amount: Balance Before Payment | Due Date | Payment Amount | Interest Rate: 3.0% Interest Payment | Term: 84 Months Principal Payment |
|---|---|---|---|---|---|
| 1 | | Jan, 2009 | | | |
| 2 | | Feb, 2009 | | | |
| 3 | | Mar, 2009 | | | |
| 4 | | Apr, 2009 | | | |
| 5 | | May, 2009 | | | |
| 6 | | Jun, 2009 | | | |
| 7 | | Jul, 2009 | | | |
| 8 | | Aug, 2009 | | | |
| 9 | | Sep, 2009 | | | |
| 10 | | Oct, 2009 | | | |
| 11 | | Nov, 2009 | | | |
| 12 | | Dec, 2009 | | | |
| 13 | | Jan, 2010 | | | |
| 14 | | Feb, 2010 | | | |
| 15 | | Mar, 2010 | | | |
| 16 | | Apr, 2010 | | | |
| 17 | | May, 2010 | | | |
| 18 | | Jun, 2010 | | | |
| 19 | | Jul, 2010 | | | |
| 20 | | Aug, 2010 | | | |
| 21 | | Sep, 2010 | | | |
| 22 | | Oct, 2010 | | | |
| 23 | | Nov, 2010 | | | |
| 24 | | Dec, 2010 | | | |
| 25 | | Jan, 2011 | | | |
| 26 | | Feb, 2011 | | | |
| 27 | | Mar, 2011 | | | |
| 28 | | Apr, 2011 | | | |
| 29 | | May, 2011 | | | |
| 30 | | Jun, 2011 | | | |
| 31 | | Jul, 2011 | | | |
| 32 | | Aug, 2011 | | | |
| 33 | | Sep, 2011 | | | |
| 34 | | Oct, 2011 | | | |
| 35 | | Nov, 2011 | | | |
| 36 | | Dec, 2011 | | | |
| 37 | | Jan, 2012 | | | |
| 38 | | Feb, 2012 | | | |
| 39 | | Mar, 2012 | | | |
| 40 | | Apr, 2012 | | | |
| 41 | | May, 2012 | | | |
| 42 | | Jun, 2012 | | | |
| 43 | | Jul, 2012 | | | |
| 44 | | Aug, 2012 | | | |
| 45 | | Sep, 2012 | | | |
| 46 | | Oct, 2012 | | | |
| 47 | | Nov, 2012 | | | |
| 48 | | Dec, 2012 | | | |
| 49 | | Jan, 2013 | | | |
| 50 | | Feb, 2013 | | | |
| 51 | | Mar, 2013 | | | |
| 52 | | Apr, 2013 | | | |
| 53 | | May, 2013 | | | |
| 54 | | Jun, 2013 | | | |
| 55 | | Jul, 2013 | | | |
| 56 | | Aug, 2013 | | | |

| | |
|---|---|
| 57 | Sep, 2013 |
| 58 | Oct, 2013 |
| 59 | Nov, 2013 |
| 60 | Dec, 2013 |
| 61 | Jan, 2014 |
| 62 | Feb, 2014 |
| 63 | Mar, 2014 |
| 64 | Apr, 2014 |
| 65 | May, 2014 |
| 66 | Jun, 2014 |
| 67 | Jul, 2014 |
| 68 | Aug, 2014 |
| 69 | Sep, 2014 |
| 70 | Oct, 2014 |
| 71 | Nov, 2014 |
| 72 | Dec, 2014 |
| 73 | Jan, 2015 |
| 74 | Feb, 2015 |
| 75 | Mar, 2015 |
| 76 | Apr, 2015 |
| 77 | May, 2015 |
| 78 | Jun, 2015 |
| 79 | Jul, 2015 |
| 80 | Aug, 2015 |
| 81 | Sep, 2015 |
| 82 | Oct, 2015 |
| 83 | Nov, 2015 |
| 84 | Dec, 2015 |