UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division
Civil Action No. 15-CV-175

|  |  |
|---|---|
| BENJAMIN E. DAVIS and ROBERTO F. GARCIA, | FIRST AMENDED **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| vs. |  |
| MERRILL LYNCH & CO., INC., and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., |  |
| Defendants. |  |

COME NOW Plaintiffs Benjamin E. Davis and Roberto F. Garcia on behalf of themselves and the Class of others similarly situated as defined herein, and hereby file this First Amended Class Action Complaint against Defendants Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith, Inc. (collectively, "Merrill Lynch"), and state as follows:

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

**I. PARTIES**

1. Plaintiff Benjamin E. Davis ("Davis") is an adult citizen of North Carolina and resides in Mecklenburg County, North Carolina. Davis was employed as a Financial Advisor ("FA") by Merrill Lynch in Charlotte, North Carolina from January, 1983 until his involuntary termination in May, 2013.

2. Plaintiff Roberto F. Garcia ("Garcia") is an adult citizen of Florida and resides in Dade County, Florida. Garcia was employed as an FA by Merrill Lynch from October, 1988 until his involuntary termination in September, 2012.

3. Defendant Merrill Lynch & Co., Inc. is a financial services holding company incorporated in Delaware, whose subsidiaries provide financial and investment services. Its subsidiary, Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. is a full service securities firm engaged in the retail and institutional sale of securities and various other financial products. Defendants Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith, Inc. employ approximately 17,000 persons nationwide as Financial Advisors ("FAs") who sell its products and services at its offices located throughout the country. As of 2012, Merrill Lynch was the country's largest provider of brokerage and brokerage-related services.

4. On the weekend of September 13, 2008, Bank of America and Merrill Lynch entered into an agreement that Bank of America, which is headquartered in North Carolina, would acquire Merrill Lynch for approximately $50 billion in an all-stock transaction. This transaction constituted a "Change in Control" as defined by the Plans described below.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter under the Class Action Fairness Act and 28 U.S.C. §1332.

6. Venue is appropriate as Class Representative Davis lives in Mecklenburg County, NC, Bank of America, the parent of Merrill Lynch has its headquarters in Mecklenburg County, NC and the majority of the witnesses relevant to this matter work and reside in Mecklenburg County, NC or the immediate vicinity.

## III. FACTUAL ALLEGATIONS

### A. The Relevant Deferred Compensation Plans

7. Plaintiffs and the Class they seek to represent are individuals who: (a) were employed by Merrill Lynch on September 15, 2008; (b) participated in one or more of the Plans and/or the ATP; (c) are either currently employed with Merrill Lynch or were involuntarily terminated from employment with Merrill Lynch between April 20, 2009 and the present; (d) currently have or at the time of their termination had unvested awards in one or more of the Plans and/or remaining ATP bonus payments; and (e) were not paid their account balances in the Plans for awards made for production year 2008 and prior, or the remaining ATP monthly bonus payments pursuant to the ATP and its Amendment.

8. Under the compensation system in effect at Merrill Lynch prior to January, 2009, an FA's compensation (excluding insurance benefits) had three components: (1) cash compensation, (2) participation in long-term contingent compensation, and (3) other compensation-based awards and ancillary benefits. The primary determinant of all three components was the "production credit" – credit given for commissions earned on transactions for which the FA was deemed responsible.

9. The first component, cash compensation, was computed as a percentage of the production credits generated by the FA that year. The percentage varied with the FA's overall level of production credit: the greater the total production credit, the greater the percentage of that credit that was awarded as cash compensation. Cash compensation also depended on the type of transaction that generated the commission, although for all types of transactions, a higher percentage was awarded to FAs with higher total production credit. A compensation matrix for each year, called a "payout grid," showed the percentage of production credits awarded for each type of transaction at each level of overall production credit.

10. The second component, long-term contingent compensation, involved earned compensation that was diverted into one or more of four plans: the Merrill Lynch Financial Advisor Capital Accumulation Plan, referred to as "FACAAP"; the Merrill Lynch Growth Award Plan for Financial Advisors, referred to as "GAP"; the WealthBuilder Account Plan, referred to as "WealthBuilder," and the Long Term Incentive Compensation Program for Managers and Producers, referred to as "LTICP" (together FACAAP, GAP, WealthBuilder and LTICP are sometimes referred to herein as the "Plans").

11. Under the Plans, long-term contingent compensation was awarded, but not immediately paid out. Typically, a Plans participant had to remain at Merrill Lynch for a certain number of years in order to receive the compensation.

12. During the time of their employment with Merrill Lynch, Plaintiffs and Class members were eligible for, and participated in, one or more of the Plans established by Merrill Lynch.

13. All four of the Plans have documents describing the terms of same, which are contracts binding both Merrill Lynch and the Plans participants (FACAAP attached as Exhibit A, GAP attached as Exhibit B, WealthBuilder attached as Exhibit C and LTICP attached as Exhibit D).

14. All of the Plans are governed by New York law.

15. All of the Plans provided for long-term contingent compensation to be 100% vested and entire account balances paid in a cash lump sum as promptly as possible (no later than 45 days) after termination of employment following a Change in Control of Merrill Lynch.

16. Merrill Lynch alleges that it terminated Plaintiffs and Class members for "Cause" and that for this reason they were not entitled to payment of their awards under the Plans.

17. However, Merrill Lynch did not follow the contractual procedures required to properly terminate Plaintiffs and Class members for "Cause" as defined in the Plans.

18. Section 9(d)(v) of the FACAAP concerns termination for "Cause" and outlines the procedures Merrill Lynch must undertake in order to do so. Substantially similar provisions can be found in GAP Section 7.6(e), WealthBuilder Section 8.4(e) and LTICP Section 8.4.

19. Upon information and belief, Merrill Lynch did not meet the Cause procedures with regard to the termination of Plaintiffs and Class members set forth in any of the Plans.

20. Due to its failure to follow the specific Plans' terms required to find termination for Cause, the terminations of Plaintiffs and Class members were contractually without Cause.

21. Due to being terminated without Merrill Lynch satisfying the Cause requirements under the Plans, Plaintiffs and Class members are entitled to full payment of their Plans' account balances pursuant to contract.

22. To date, upon information and belief, Merrill Lynch has failed to honor the Plans and pay monies owed to Plaintiffs and Class members.

23. The named Plaintiffs represent a Class of, upon information and belief, more than 1,000 Plans participants who were terminated by Merrill Lynch but that did not receive their Plans' payouts despite clear language in the Plans.

24. Defendants' breach of the Plans for failure to pay benefits due and owing under same affected the named Plaintiffs and the proposed Class they seek to represent in that the conduct was widespread and uniform as to the Plaintiffs and Class members, and the contractual provisions in the Plans addressing payouts following a Change in Control are uniform as to Plaintiffs and Class members.

### B. The Advisor Transition Program Agreement

25. In October, 2008, Merrill Lynch offered retention agreements entitled "Advisor Transition Program" ("ATP") agreements to certain FAs (sample ATP and its Amendment attached as Exhibit E, which contain the same terms offered to each ATP participant).

26. The ATP provided for compensation to the offered FA based upon that FA's productivity as measured by production credit. This compensation came in the form of a promissory note that would be satisfied through monthly bonus payments to each participant during the life of the loan. These bonus payments represented the promissory note's monthly repayment obligation, plus interest.

27. On November 7, 2008, an Amendment to the ATP ("Amendment," see Exhibit E) was offered to the same qualifying FAs who previously received the ATP.

28. The Amendment's specific purpose was to amend the language of the original ATP's Section 1 regarding terminations for Cause.

29. Pursuant to the terms of the ATP, a terminated FA would be paid the monthly bonus payments in lump sum unless Defendants terminated the FA for Cause as defined in the Amendment.

30. According to the Amendment executed by Plaintiffs and Class members, in order for a termination to properly be for Cause to preclude lump sum payment of the monthly bonus payments, Merrill Lynch is required to follow certain outlined procedures. These procedures are outlined in the Amendment, Section 1(a)(iv).

31. As with the Plans outlined above, a termination by Merrill Lynch without Cause triggers Merrill Lynch's obligation to pay the ATP participant's remaining monthly bonus payments in lump sum pursuant to contract.

32. As with the Plans described above, Merrill Lynch did not perform its obligations pursuant to contract in order to deny ATP bonus payments, nor did Merrill Lynch provide payment of the ATP bonus payments to Plaintiffs and Class members.

33. Defendants' breach of the ATP for failure to pay monies due and owing to its employees affected the named Plaintiffs and the proposed Class they seek to represent in that the conduct was widespread and uniform as to the Plaintiffs and Class members, and the contractual provisions in the ATP and its Amendment addressing payouts following a termination without cause are uniform as to Plaintiffs and Class members.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> Individuals who are or were employed by Merrill Lynch in the United States who: (a) were employed by Merrill Lynch on September 15, 2008; (b) participated in one or more of the Plans and/or the ATP; (c) are either currently employed with Merrill Lynch or were involuntarily terminated from employment by Merrill Lynch between April 20, 2009 and the present; (d) currently have or at the time of their termination had unvested awards in one or more of the Plans and/or remaining ATP payments; and (e) were not paid their account balances in the Plans for awards made for production year 2008 and prior, or the remaining ATP monthly bonus payments pursuant to the ATP and its Amendment.

35. Plaintiffs are members of the Class they seek to represent.

36. The proposed Class is so numerous that joinder of all members is impracticable.

37. There are questions of law and fact common to the Class, and those questions predominate over individual questions.

38. The claims alleged by Plaintiffs are typical of the claims of the Class.

39. Plaintiffs will fairly and adequately represent and protect the interests of the Class.

40. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

41. Defendants have acted and refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

42. Plaintiffs and Class members adopt and incorporate paragraphs 1 through 41 in full.

43. The Plans and ATP are valid and binding contracts between Plaintiffs and Class members on the one hand, and Defendants on the other hand.

44. Plaintiffs and Class members have adequately performed based upon the Plans and ATP.

45. Defendants have breached the terms of the Plans and ATP by failing or refusing to distribute amounts due and owing to Plaintiffs and Class members pursuant to the Plans and ATP.

46. Plaintiffs and Class members have been damaged due to Defendants' breach.

47. In addition, Defendants' conduct in their breach of the various contracts is morally culpable and may entitle Plaintiffs and Class members to punitive damages.

### COUNT II
### CONVERSION

48. Plaintiffs and Class members adopt and incorporate paragraphs 1 through 41 in full.

49. Defendants have converted the Plans' account balances and monthly ATP bonus payments of Plaintiffs and Class members, and Defendants are liable to Plaintiffs and Class members in the amount of the value of the account balances in the Plans and remaining monthly ATP bonus payments at the time of Defendants' conversions.

50. Merrill Lynch acted without following the procedures of the Plans and ATP and did so with the intent to convert.

51. Defendants remain in wrongful possession of Plaintiffs' and Class members' Plans and ATP bonus payment funds despite their demands for same.

52. Plaintiffs and Class members' Plans and ATP bonus payment funds are specific and identifiable monetary amounts.

53. Plaintiffs and Class members have been damaged due to Defendants' conversion of the Plans and ATP bonus payment funds.

## COUNT III
## UNPAID WAGES

54. Plaintiffs and Class members adopt and incorporate paragraphs 1 through 41 in full.

55. The Plans and ATP at issue are construed in accordance with and governed by the laws of the State of New York as to all matters.

56. At all relevant times, Merrill Lynch and/or BOA was an "employer" as defined in applicable labor laws, and Plaintiffs and Class members were "employees" within the meaning of such labor laws.

57. Defendants promised to pay Plaintiffs and Class members for their services pursuant to the Plans and ATP as part of their earned wages during their tenure.

58. The Plans awards and ATP bonus payments in the instant matter are properly "wages" as defined under the applicable labor laws.

59. Plaintiffs and Class members performed and met all requirements under the Plans and ATP in order to receive payouts following their terminations.

60. Pursuant to applicable labor laws, Plaintiffs and Class members were entitled to be paid for those wages.

61. Defendants have failed, neglected, or refused to pay Plaintiffs and Class members for all of their wages earned pursuant to applicable labor laws, proximately causing Plaintiffs' and Class members' damage.

## COUNT IV
## UNJUST ENRICHMENT

62. Plaintiffs and Class members adopt and incorporate paragraphs 1 through 41 in full.

63. Throughout their tenure at Merrill Lynch, Plaintiffs and Class members performed their services in good faith. Defendants accepted Plaintiffs' and Class members' services and derived great benefit from same. Plaintiffs and Class members were granted compensation under the Plans and ATP for these services and reasonably expected that they would receive payments due and owing to them under the Plans and ATP if their employment ended involuntarily following a Change in Control and Merrill Lynch failed to follow the Cause procedures.

64. By engaging in the conduct described in this Complaint, Defendants were unjustly enriched by the services performed by Plaintiffs and Class members and by retaining for itself monies under the Plans and ATP which are due and owing to Plaintiffs and Class members.

65. Under the circumstances described in this Complaint, it would be inequitable and unjust for Defendants to retain Plaintiffs' and Class members' funds under the Plans and ATP.

66. Defendants' retention of Plaintiffs' and Class members' Plans and ATP funds has damaged Plaintiffs and Class members.

## COUNT V
## INJUNCTIVE RELIEF

67. Plaintiffs and Class members adopt and incorporate paragraphs 1 through 41 in full.

68. Plaintiffs and Class members are likely to prevail on the merits of their claims in this case.

69. Plaintiffs and Class members have suffered irreparable harm as a result of Defendants' failure to properly follow the Plans and ATP agreements.

70. The balance of equities in this matter is decidedly in favor of the granting of injunctive relief.

71. The public interest will not be disserved by the issuance of an injunction, as Defendants would be required to follow written contracts that Defendants drafted.

72. Plaintiffs and Class members request the Court determine and declare that Plaintiffs and all similarly situated Class members are entitled to an immediate and full distribution of their Plans' accounts and monthly bonus payments under the ATP. Plaintiffs and Class members further request such other equitable, declaratory, and injunctive relief be granted as may be necessary to compel such a distribution, including the establishment of a constructive trust, if necessary and appropriate, and/or prohibiting Defendants from continuing their improper actions in the future.

73. With regard to Class members who are currently employed by Merrill Lynch, Plaintiffs request injunctive relief necessary to implement a neutral review process to perform "Cause" determinations consistent with the intent of the Plans for employees who are involuntarily terminated by Merrill Lynch in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court find in favor of them and the Class and against Defendants as follows:

a. Certify this case as a class action;

b. Designate Plaintiffs as Class Representatives;

c. Designate Plaintiffs' counsel of record as Class Counsel;

d. Order appropriate equitable and injunctive relief to remedy the unlawful conduct;

e. Award Plaintiffs and all others similarly situated the full value of all compensation and benefits lost and that they may lose in the future as a result of Defendants' conduct;

f. Award Plaintiffs and all others similarly situated all damages, interest and attorneys' fees recoverable under applicable laws;

g. Award Plaintiffs and all others similarly situated punitive damages, compensatory and other damages;

h. Award Plaintiffs and all others similarly situated prejudgment interest and attorneys' fees, costs and disbursements, and liquidated damages, as provided by law;

i. Award Plaintiffs and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the unlawful conduct and fairly compensate Plaintiffs, including, but not limited to, injunctive relief necessary to implement a neutral review process to perform "Cause" determinations consistent with the intent of the Plans for Merrill Lynch employees terminated in the future;

j. Order disgorgement of any and all profits of Defendants earned or associated with the contractual breaches referenced herein;

k. Award Plaintiffs and all others similarly situated any and all other relief as this Court deems just and proper; and

l. That this matter be tried by a jury.

This the 20th day of July, 2015.

Respectfully submitted,

*/s/Steven A. Meckler*
Steven A. Meckler
N.C. State Bar No. 26544
Shumaker, Loop & Kendrick, LLP
128 South Tryon Street, Suite 1800
Charlotte, North Carolina 28202
Telephone: (704) 375-0057
Facsimile: (704) 332-1197
E-Mail: smeckler@slk-law.com
*Attorneys for Plaintiffs*

*/s/Michael S. Taaffe*
Michael S. Taaffe (*admitted Pro Hac Vice*)
Florida State Bar No. 490318
Michael D. Bressan (*admitted Pro Hac Vice*)
Florida State Bar No. 011092
David L. Wyant, Jr. (*admittied Pro Hac Vice*)
Florida State Bar No. 0085600
Shumaker, Loop & Kendrick, LLP
240 South Pineapple Ave. – 10th Floor
Sarasota, Florida 34236

Telephone: (941) 366-6660
Facsimile: (941) 366-3999
E-Mail: mtaaffe@slk-law.com
E-Mail: mbressan@slk-law.com
E-Mail: dwyant@slk-law.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 20th day of July, 2015, a true and correct copy of the foregoing document was served on the parties listed below by the Court's electronic distribution system and/or U.S. Mail, postage prepaid:

Mark A. Nebrig, Esq.
Glenn E. Ketner, Esq.
Moore & Van Allen, PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
marknebrig@mvalaw.com
boketner@mvalaw.com

Mark S. Dichter, Esq.
Morgan Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
mdichter@morganlewis.com

Samuel S. Shaulson, Esq.
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, NY 10178
sshaulson@morganlewis.com

S. Elaine McChesney, Esq.
Morgan Lewis & Bockius, LLP
One Federal Street
Boston, MA 02110
Elaine.mcchesney@morganlewis.com

*/s/Michael S. Taaffe*