# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
Civil Action No.: 3:15-CV-175-RJC-DCK

BENJAMIN E. DAVIS and
ROBERTO F. GARCIA,

               Plaintiffs,

v.

MERRILL LYNCH & CO., INC., and
MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

               Defendants.

## STIPULATION OF SETTLEMENT

Michael S. Taaffe
Michael D. Bressan
Jarrod J. Malone
David L. Wyant, Jr.
Shumaker, Loop & Kendrick, LLP
240 South Pineapple Avenue
10th Floor
Sarasota, Florida 34236

Steven Ari Meckler
Shumaker, Loop & Kendrick, LLP
128 South Tryon Street
Suite 1800
Charlotte, North Carolina 28202
*Local Counsel*

*Attorneys for Plaintiffs Benjamin E. Davis
and Roberto F. Garcia*

Sam S. Shaulson
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178

Mark S. Dichter
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

S. Elaine McChesney
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, Massachusetts 02110

Mark Andrew Nebrig
Moore & Van Allen
100 North Tryon Street
Suite 4700
Charlotte, North Carolina 28202
*Local Counsel*

*Attorneys for Defendants Merrill Lynch &
Co., Inc. and Merrill Lynch, Pierce,
Fenner & Smith, Incorporated*

# TABLE OF CONTENTS

I.     Recitals and the Nature of the Litigation ......................................................2

II.    The Conditional Nature of This Agreement .................................................4

III.   Denial of Wrongdoing or Liability ................................................................6

IV.    Claims of the Class Representatives and Benefits of Settlement ...............7

V.     Terms of the Agreement of Settlement.........................................................8

    1.   Definitions.....................................................................................................8

    2.   Certification of Class ..................................................................................22

    3.   Payments to Participating Claimants ..........................................................23

    4.   Payment of Outstanding ATP Note Balances for Participating Claimants ...................................................................................................35

    5.   Court Approval of Notice to the Class and Final Approval Hearing.......................................................................................................38

    6.   Notice to Class Members ............................................................................41

    7.   Responses to the Class Notice and Programmatic Relief Notice; Motion for Final Approval..............45

    8.   Timing of Payment to Participating Claimants............................52

    9.   Effectiveness of Agreement.........................................................55

    10.  Releases.......................................................................................56

    11.  Stay of Discovery and Other Proceedings ....................................57

    12.  Payment of Attorneys' Fees and Litigation Costs and Enhancements to the Class Representatives ...................................58

    13.  Claims Administrator....................................................................61

    14.  Termination of Settlement ............................................................62

    15.  Confidentiality .............................................................................64

    16.  Cooperation..................................................................................64

    17.  Miscellaneous Provisions.............................................................64

Exhibit 1 – Proposed Order Preliminarily Approving Settlement and Providing for Notice

    Exhibit 1-A – Notice of Proposed Settlement of Class Action

    Exhibit 1-B – Programmatic Relief Notice

Exhibit 2 – Proposed Final Judgment and Order of Dismissal with Prejudice

Case 3:15-cv-00175-RJC-DCK   Document 37-1   Filed 02/08/16   Page 2 of 72

BENJAMIN E. DAVIS and
ROBERTO F. GARCIA,

                      Plaintiffs,

v.

MERRILL LYNCH & CO., INC., and
MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

                      Defendants.

## STIPULATION OF SETTLEMENT

This Joint Stipulation of Settlement of Class Action and Release ("Agreement," "Stipulation," or "Settlement") is entered into between Plaintiffs Benjamin E. Davis and Roberto F. Garcia (collectively, "the Settling Named Plaintiffs" or "Class Representatives"), individually and as class representatives on behalf of the Settlement Class defined in Section V, Paragraph 1.52 of this Agreement, on the one hand, and Defendants Merrill Lynch & Co, Inc. and Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Defendants" or "Merrill Lynch"), on the other hand. The Class and Defendants will be referred to collectively as the "Settling Parties."

IT IS HEREBY STIPULATED AND AGREED by and between the Settling Parties as set forth below:

# I.    Recitals and the Nature of the Litigation.

A.    Merrill Lynch is a full-service securities firm with offices located throughout the United States and with its principal place of business in New York, New York.

B.    The Class Representatives were employed by Merrill Lynch as Financial Advisors. On April 20, 2015, the Class Representatives filed their Class Action Complaint ("Complaint") in the United States District Court for the Western District of North Carolina, Charlotte Division, No. 3:15-CV-00175-RJC-DCK. On July 20, 2015, the Class Representatives filed an Amended Class Action Complaint ("Amended Complaint"). On February 8, 2016, the Class Representatives filed a Second Amended Class Action Complaint ("Second Amended Complaint"). The Second Amended Complaint alleges that certain persons who were employed by Merrill Lynch as of September 15, 2008 and who were involuntarily terminated following the merger between Bank of America Corporation and Merrill Lynch & Co., Inc. were entitled to receive certain amounts under the Merrill Lynch Financial Advisor Capital Accumulation Award Plan ("FACAAP"); the Long Term Incentive Compensation Plan ("LTICP"); the Merrill Lynch Growth Award Plan for Financial Advisors ("Growth Award"); and/or the Merrill Lynch Wealthbuilder Account Plan ("Wealthbuilder") (collectively, the "Plans"), as well as the Merrill Lynch Advisor Transition Program ("ATP"), as a result of their alleged involuntary terminations following the Change in Control (as defined below) (the "Action" or the "Litigation").

C.    Class Counsel has thoroughly investigated and analyzed the facts and circumstances relevant to the claims brought in the Litigation. To date, Class Counsel has reviewed and analyzed an extensive amount of documents and data related to the claims in the Litigation. This process has included, but is not limited to, the review of hundreds of thousands of relevant documents produced by Merrill Lynch, taking sworn testimony on numerous

-2-

occasions from the Plans' administrators and other primary witnesses of Defendants, consulting with expert witnesses, arbitrating related cases to conclusion, and resolving numerous related Change in Control vesting claims. In addition, Defendants have produced documents and/or information needed to analyze, value, and categorize the status of actual and potential class members or excluded individuals and continue to cooperate with Class Counsel to produce and update the same types of information for individuals who have been involuntarily terminated. The Settling Parties engaged in extensive settlement discussions, spanning over several months and with the assistance of an experienced mediator, which resulted in the proposed settlement of the Litigation.

D.     The Settling Named Plaintiffs and Class Counsel are sufficiently familiar with the facts of this case and the applicable federal and state laws to make an informed judgment as to the fairness of the Agreement. Based on their evaluation, the Settling Named Plaintiffs and Class Counsel have concluded that the Agreement is fair, reasonable, and in the best interests of the Class Members and respectfully request that the Agreement be approved by the Court.

**II.     The Conditional Nature of This Agreement.**

A.     This Agreement and all associated exhibits or attachments are made for the sole purpose of attempting to consummate settlement of this action on a class-wide basis. This Agreement and the settlement it evidences are made in compromise of disputed claims. Because the Action is pled as a class action, this settlement must receive preliminary and final approval by the Court. Accordingly, the Settling Parties enter into this Agreement and associated settlement on a conditional basis. In the event that Defendants exercise a right herein to terminate or rescind this Agreement, the Court does not approve the Agreement, the Court does not execute and file the Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become Final for any reason, this Agreement shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever; the Settling Parties will not use or attempt to use any conduct or statement of any Settling Party in connection with this Agreement or any effort to seek approval of the Agreement to affect or prejudice any other Settling Party's rights in any ensuing litigation except to the extent permitted by this Agreement; and the negotiation, terms, and entry of the Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, any and all state statutes of a similar nature, and the mediation privilege. Notwithstanding the foregoing, Defendants may use, offer, admit, or refer to the Stipulation and to the settlement reached therein where necessary to defend themselves in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding.

B.     Defendants deny all of the claims as to liability, damages, penalties, interest, fees, restitution, and all other forms of relief as well as the class allegations asserted in the Litigation. Defendants have agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Defendants do not waive, but

-4-

rather expressly reserve, all rights to challenge all such claims and allegations in the Litigation upon all procedural and factual grounds, including without limitation the ability to challenge class action treatment on any grounds and/or to assert any and all defenses or privileges.

C.      The Settling Parties agree that Defendants retain and reserve all rights, and agree not to take a position to the contrary and agree not to argue or present any argument, and hereby waive any argument, that Defendants could not contest (or are estopped from contesting) class certification and/or proceeding collectively on any grounds if the Litigation were to proceed or that this Agreement is evidence of or constitutes an admission (i) of liability or damages, (ii) that prejudices any Defendants' rights in any ensuing litigation, or (iii) that class certification may be appropriate or that proceeding collectively in the Litigation is proper or cannot be contested on any grounds.

D.      Defendants agree not to claim delay or laches against Class Representatives and Class Counsel regarding, without limitation, class certification in the event that this Agreement is deemed void or the Effective Date does not occur. To the extent this Agreement is deemed void or the Effective Date does not occur, Class Representatives do not waive, but rather expressly reserve, all rights to prosecute all such claims and allegations in the Litigation upon all procedural and factual grounds, including through motions for class certification and summary judgment. Defendants agree that Class Representatives retain and reserve these rights and agree not to take a position to the contrary; specifically, Defendants agree not to argue or present any argument, and hereby waive any argument, that based on this Agreement, Class Representatives could not seek class certification or move for summary judgment on any of their claims or Defendants' defenses if this Litigation were to proceed.

-5-

E.    This Agreement and the negotiations leading thereto shall not be admissible or referenced in any fashion in the Litigation or any other proceeding or Court if the settlement does not become Final including, but not limited to, in any motion practice on class certification or the appropriateness of proceeding as a class action, except to the extent permitted by Section II, Paragraph A.

## III.    Denial of Wrongdoing or Liability.

A.    The Settling Parties are entering into this Agreement for the sole purpose of resolving vigorously-disputed claims that have arisen between them and in the interest of avoiding the burdens, expense, and risk of further litigation.

B.    By entering into any preliminary settlement discussion, agreeing to the terms of this Agreement, or seeking the approval of the Settlement, the Settling Parties are not making any admissions or concessions whatsoever with respect to any claims or defenses alleged or asserted, or any factual or legal assertions in the Litigation. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations between the Settling Parties or their counsel, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement shall be construed as an admission or concession by any of the Settling Parties or their counsel of anything whatsoever, including but not limited to, (1) any alleged violation or breach of contract or duty, any alleged fraud, misrepresentation or deception, or any alleged violation of any federal, state, or local law, rule, regulation, guideline, or legal requirement (or any other applicable law, rule, regulation, guideline, or legal requirement); (2) the validity of any Released Claim, or any wrongdoing or liability of the Releasees; or (3) any fault or omissions of the Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

-6-

C.     Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of the Defendants or their parent or affiliated companies, or to establish the existence of any condition constituting a violation of or non-compliance with any federal, state, local, or other applicable law, rule, regulation, guideline, contract, Plans, or other legal requirement, or the propriety of class certification in any other proceeding or action. Notwithstanding the foregoing, Defendants may use, offer, admit, or refer to the Stipulation and to the settlement reached therein where necessary to defend themselves in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, and if the Settlement is finally approved and this Agreement becomes effective, Class Members may use the Agreement where necessary to show whether a particular claim was or was not released as part of the Settlement.

D.     The Settling Parties expressly reserve all rights and defenses to any claims and do not waive any such rights or defenses in the event that the Agreement is not approved for any reason.

## IV.     Claims of The Class Representatives and Benefits of Settlement.

The Class Representatives and Class Counsel believe that the claims asserted in the Litigation have merit. The Class Representatives and Class Counsel, however, recognize and acknowledge the expense and length of the type of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. The Class Representatives and Class Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in class actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Based upon their evaluation, the Class Representatives and Class

-7-

Counsel have determined that the settlement set forth in the Agreement is in the best interests of the Class Representatives and the Class.

## V. Terms of The Agreement of Settlement.

NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the Class Representatives (for themselves and the Class Members) and Defendants, with the assistance of their respective counsel or attorneys of record, that, as among the Settling Parties, including all Settlement Class Members, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Agreement and the Judgment.

1.    Definitions.

As used in all parts of this Agreement, the following terms have the meanings specified below:

1.1    "ATP" means the Merrill Lynch Advisor Transition Program and its amendment. The ATP was a retention program offered to certain Merrill Lynch Financial Advisors, as a result of the September 15, 2008 merger agreement between Bank of America Corporation and Merrill Lynch & Co., Inc., to encourage those Financial Advisors to remain with Merrill Lynch following the Change in Control.

1.2    "ATP Mediation" means the voluntary mediated process that Participating Claimants can elect to participate in with James Yellen, Esq. ("Yellen") regarding the Participating Claimant's repayment of his or her Outstanding ATP Note Balance.

1.3    "ATP Promissory Note" means the promissory note executed in connection with the ATP.

-8-

1.4　　"ATP Setoff Amount" means the Individual Gross Settlement Sum, less amounts attributable to attorneys' fees, costs awarded to Class Counsel, and tax withholding under this settlement, of a Participating Claimant with an Outstanding ATP Note Balance.

1.5　　"ATP Settlement Amount" means the settlement amount for claims related to Unpaid ATP Bonus Amounts, calculated pursuant to the Settlement Formula and included in the Individual Gross Settlement Amount for Monetary Relief Class Members who participated in the ATP and who, at the time of their termination, were not paid remaining Unpaid ATP Bonus Amounts and/or did not have their ATP Promissory Note balance at the time of termination forgiven.

1.6　　"Agreement" means this Joint Stipulation of Settlement of Class Action and Release and all of its attachments and exhibits, which the Settling Parties understand and agree sets forth all material terms and conditions of the Settlement between them, and which is subject to Court approval. It is understood and agreed that Defendants' obligations for payment under this Agreement are conditioned on, *inter alia*, the occurrence of the Effective Date and other conditions set forth in this Agreement.

1.7　　"Amended Complaint" means the Class Action Complaint filed by the Class Representatives on or about July 20, 2015 in the United States District Court for the Western District of North Carolina, Charlotte Division, No. 3:15-CV-00175-RJC-DCK.

1.8　　"Change in Control" means the merger which was consummated on January 1, 2009 pursuant to the September 15, 2008 merger agreement between Bank of America Corporation and Merrill Lynch & Co., Inc.

1.9　　"Claims Administrator" means Rust Consulting, Inc.

1.10　　"Class" means those individuals who:

-9-

(a) were employed by Merrill Lynch in the United States on September 15, 2008;

(b) participated in one or more of the Plans and/or ATP;

(c) either are employed by Merrill Lynch as of the day following the Preliminary Approval Date or were involuntarily terminated from employment by Merrill Lynch between January 1, 2009 and the Preliminary Approval Date; and

(d) either as of the day following the Preliminary Approval Date have or at the time of their termination had unvested awards in one or more of the Plans and/or would have been eligible to receive remaining Unpaid ATP Bonus Amounts.

Class Members who fall into the following categories are eligible for the Payments to Participating Claimants described in Paragraph 3.1 and will receive the Class Notice:

(a) were involuntarily terminated between January 1, 2009 and the Preliminary Approval Date and were not paid [i] all of their account balances in the Plans for awards made for production year 2008 and prior, [ii] their remaining Unpaid ATP Bonus Amounts pursuant to the ATP, and/or [iii] did not have their ATP Promissory Note balance at the time of termination forgiven[1];

(b) subject to Paragraph 8.5, have not, on or before the Settlement Payment Date, been barred from the industry by FINRA or other regulatory body arising from or related to conduct while an employee of Merrill Lynch (regardless of when that conduct was uncovered or when investigation into that conduct is initiated);

(c) subject to Paragraph 8.5, have not, on or before the Settlement Payment Date, been suspended by FINRA or other regulatory body for more than one year arising from or related to

---

[1] Class Members whose Individual Gross Settlement Sums are determined by the Settlement Formula in Paragraph 3.1.1(c) are exempt from 1.10(a)(iii) and may have had their ATP Promissory Note at time of termination forgiven.

-10-

conduct while an employee of Merrill Lynch (regardless of when that conduct was uncovered or when investigation into that conduct is initiated); and

(d) did not sign a release of claims for Change in Control vesting of awards under the Plans or for Unpaid ATP Bonus vesting due to a termination not for Cause where the individual or Defendants were represented by counsel for the Settling Parties in this Litigation or where the individual received greater monetary amounts as consideration for his or her release than they would have received under the Settlement Formula, or have not had claims under the Plans or for Unpaid ATP Bonus vesting due to a termination not for Cause otherwise extinguished ("Monetary Relief Class Members").

Class Members who are employed by Merrill Lynch as of the day following the Preliminary Approval Date ("Injunctive Relief Class Members") are eligible for the Programmatic Relief described in Paragraph 3.3 only and will receive the Programmatic Relief Notice only, defined below.

      1.11    "Class Counsel" means the law firm Shumaker, Loop & Kendrick, LLP.

      1.12    "Class Member" or "Member of the Class" means a person who is a member of the Class.

      1.13    "Class Notice" means a notice (and associated response form) entitled "Notice of Proposed Settlement of Class Action" to be approved by the Court, substantially in the form attached hereto as Exhibit 1-A, which will be sent to Monetary Relief Class Members.

      1.14    "Class Representatives" or "The Class Representatives" mean the Settling Named Plaintiffs in the Litigation identified in the first Paragraph of this Agreement.

1.15    "Complaint" means the Class Action Complaint filed by the Class

Representatives on or about April 20, 2015 in the United States District Court for the Western

District of North Carolina, Charlotte Division, No. 3:15-CV-00175-RJC-DCK.

1.16    "Court" means the United States District Court for the Western District of

North Carolina.

1.17    "Defendants" mean Merrill Lynch & Co, Inc. and Merrill Lynch, Pierce,

Fenner & Smith, Inc.

1.18    "Effective Date" means the date when all of the conditions set forth in

Paragraph 9 have occurred, provided, however, that the Defendants have not exercised their right

to terminate this Agreement rescission under Paragraph 14.

1.19    "FACAAP" means the Merrill Lynch Financial Advisor Capital

Accumulation Award Plan. FACAAP awards under this settlement include awards granted in

2009 for performance year 2008 which were awarded under the 2009 Key Associate Stock Plan

but which Plaintiffs claim should have been awarded under FACAAP. With the exception of the

provisions set forth in Section 3.3, nothing in this Stipulation or the Settlement shall impact the

Key Associate Stock Plan or awards made pursuant to the Key Associate Stock Plan.

1.20    "FINRA" means the Financial Industry Regulatory Authority.

1.21    "Final" means the latest of:  (i) the date of final affirmance on an appeal of

the Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the

Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of

any form of valid appeal from the Judgment.  Notwithstanding the foregoing, any proceeding or

order, or any appeal or petition for a writ pertaining solely to the award of attorneys' fees,

-12-

litigation costs, and/or enhancement awards to the Class Representatives shall not, by itself, in any way delay or preclude the Judgment from becoming Final.

     1.22    "Final Approval Hearing" means a hearing set by the Court to take place on or about the date which is forty-five (45) days after the Notice Response Deadline for the purpose of: (i) determining the fairness, adequacy, and reasonableness of the Agreement and associated settlement pursuant to class action procedures and requirements; and (ii) entering Judgment.

     1.23    "Growth Award" means the Merrill Lynch Growth Award Plan for Financial Advisors.

     1.24    "Individual Gross Settlement Sum" means the total gross amount allocated to an individual Monetary Relief Class Member as calculated pursuant to the Settlement Formula, before deductions for Payroll Taxes, attorneys' fees, and costs.

     1.25    "Individual Net Settlement Sum" means the individual Monetary Relief Class Member's Individual Gross Settlement Sum, less deductions for Payroll Taxes and the individual Class Member's pro rata share of attorneys' fees and costs.

     1.26    "Judgment" means the judgment to be rendered by the Court pursuant to this Agreement, in the form attached hereto as Proposed Exhibit 2, or in a similar form without material changes thereto, dismissing the Litigation with prejudice.

     1.27    "Last Known Address" or "Last Known Addresses" means the most recently recorded mailing address for a Class Member as such information is contained in employment or personnel records maintained by Defendants.

     1.28    The "Litigation" or the "Lawsuit" means the Action as described in Section I of the Agreement.

1.29    "LTICP" means the Long Term Incentive Compensation Plan for Managers and Producers.

1.30    "Merrill Lynch" means Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Defendants in the Litigation.

1.31    "Neutral" means the individual granted the full power, discretion, and authority to adjudicate an Injunctive Relief Class Member's challenge to an initial determination by Merrill Lynch Management to forfeit the Injunctive Relief Class Member's unvested FACAAP awards due to a termination for Cause pursuant to the terms of the applicable Plan. The Neutral will be selected by Merrill Lynch with the consent of Class Counsel, and Merrill Lynch will be responsible for the fees and costs of the Neutral. In the event the Neutral becomes incapable of fulfilling his/her duties, Merrill Lynch will select a replacement Neutral with the consent of Class Counsel.

1.32    The "Notice Mailing Date" shall be a date no later than thirty (30) days after the Preliminary Approval Date when the Class Notice and Programmatic Relief Notice are sent to Class Members.

1.33    The "Notice Response Deadline" shall be the date seventy-five (75) days after the Notice Mailing Date.

1.34    "Opt Out" means the proper and timely election of a Monetary Relief Class Member to exclude him or herself from the Settlement Class by submitting written notice to the Claims Administrator. Injunctive Relief Class Members may not opt out from the Class.

1.35    "Order of Final Approval" shall mean an order to be entered and filed by the Court finally approving the Settlement entitled "Proposed Final Judgment and Order of Dismissal with Prejudice," substantially in the form attached hereto as Exhibit 2. The parties

-14-

will consider changes to the Order of Final Approval before submitting to the Court in connection with the motion for final approval of the settlement.

      1.36    "Outstanding ATP Note Balance" means the outstanding, full principal amount due per the terms of a Monetary Relief Class Member's ATP Promissory Note, plus any suspense balance, on the date of involuntary termination.

      1.37    "Participating Claimant" or "Participating Claimants" means each Monetary Relief Class Member who properly and timely submits a Settlement Claim Certification Form and Release in response to the Class Notice.

      1.38    "Payroll Taxes" shall mean the payroll taxes and other required withholdings for which the employee is responsible and which are customarily or otherwise required to be withheld by Merrill Lynch when making wage payments.

      1.39    "Plan Value" means the unvested balance of a Monetary Relief Class Member's account balance in the Plans as of the date of involuntary termination. The Plan Value shall be calculated using January 1, 2009 as the Change in Control Date. For purposes of this Litigation, the Plan Value shall be calculated as follows: (a) FACAAP and LTICP – (i) the Minimum Value as defined in the FACAAP Plan (award amount plus 1% interest per year) for unvested FACAAP awards made on or after January 1, 1998 and prior to January 1, 2003 that were subject to Minimum Value calculation, and (ii) the product of the number of shares of Merrill Lynch & Co., Inc. stock awarded, converted to shares of Bank of America stock, multiplied by $31.72 per share for unvested FACAAP and LTICP awards that were made on or after January 1, 2003 and unvested FACAAP awards made on or after January 1, 1998 and prior

Case 3:15-cv-00175-RJC-DCK   Document 37-1   Filed 02/08/16   Page 17 of 72

to January 1, 2003 that were not subject to the FACAAP Minimum Value calculation;[2] (b) Growth Award and/or Wealthbuilder – cash value of unvested awards as of date of involuntary termination. No post-termination interest will be added to these amounts. For any Class Member whose employment was involuntarily terminated prior to February 13, 2009, the Plan Value shall not include any amounts awarded under the Plans in 2009 for performance year 2008, notwithstanding any other provisions of this Stipulation. For any Class Member whose employment was involuntarily terminated on or after February 13, 2009, the Plan Value shall include amounts awarded under the Plans in 2009 for performance year 2008 if the Class Member was eligible for and qualified for performance year 2008 awards under the Plans.

      1.40   "Plans" mean the FACAAP and/or LTICP and/or the Growth Award and/or the Wealthbuilder.

      1.41   "Plan Administrator" means the individual granted the full power, discretion, and authority by Merrill Lynch to interpret, construe, and administer the Merrill Lynch WealthBuilder Account Plan, including the full power, discretion, and authority to adjudicate an Injunctive Relief Class Member's challenge to an initial determination by Merrill Lynch Management to forfeit the Injunctive Relief Class Member's unvested Wealthbuilder due to a termination for Cause pursuant to the terms of Wealthbuilder. Merrill Lynch will be responsible for the fees and costs of the Plan Administrator. The Plan Administrator may designate persons to carry out the specified responsibilities of the Plan Administrator, but any

---

[2] For purposes of this Litigation, the $31.72 per share price is computed as follows: the highest Fair Market Value ("FMV") of Merrill Lynch shares, as defined in the FACAAP, during the 90-day period ending on January 1, 2009 is $27.265 per share. Merrill Lynch stock was converted to Bank of America stock at a rate of 0.8595 pursuant to the merger agreement between Merrill Lynch and Bank of America. To adjust for the conversion to Bank of America stock, the $27.265 FMV is divided by 0.8595 resulting in $31.72 per share.

Case 3:15-cv-00175-RJC-DCK   Document 37-1   Filed 02/08/16   Page 18 of 72

legal obligations the Plan Administrator has shall not be impacted by any designation. Any designation of the Plan Administrator's final decision making authority shall be in writing.

1.42    "Preliminary Approval Date" shall mean the date on which the Court enters the Preliminary Approval Order.

1.43    "Preliminary Approval Order" shall mean an order to be executed and filed by the Court entitled "Proposed Order Preliminarily Approving Settlement and Providing for Notice" substantially in the form attached hereto as Exhibit 1.

1.44    "Programmatic Relief Notice" means the notice provided to Injunctive Relief Class Members regarding Programmatic Relief set forth in Paragraph 3.3 substantially in the form attached hereto as Exhibit 1-B.

1.45    "Qualifying Settlement Claim Certification Form and Release" shall mean a Settlement Claim Certification Form and Release that is fully completed, properly executed, and timely returned to the Claims Administrator by a Monetary Relief Class Member substantially in the form attached to Exhibit 1-A, attached hereto.

1.46    A "Reasonable Address Verification Measure" shall mean the utilization of the National Change of Address Database maintained by the United States Postal Service to review the accuracy of and, if possible, update a mailing address.

1.47    "Released Claims" shall mean any and all claims, defenses, demands, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, liens, costs, surcharges, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary, injunctive or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs or

-17-

expenses, whether a known or Unknown Claim, alleged or not alleged in the Litigation, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, relate to, or arise out of (i) all claims asserted or which could have been asserted in the Complaint, Amended Complaint, Second Amended Complaint, or the Litigation arising out of or related to Change in Control vesting under the Plans or vesting of the Unpaid ATP Bonus Amounts due to termination, (ii) all claims arising out of or related to Class Members' participation in or the payment or forfeiture of awards granted under the Plans, and (iii) all claims arising out of or related to a Class Member's claim for Unpaid ATP Bonus Amounts including, but not limited to: breach of contract under the Plans and/or ATP, conversion, unpaid wages, unjust enrichment, injunctive relief, fraudulent misrepresentation/concealment, fraud, violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, violation of the Employment Retirement Income Security Act of 1974, breach of fiduciary duty and/or breach of duty of good faith and fair dealing under the Plans and/or ATP, negligence, or violation of the rules of FINRA. Released Claims also include, without limitation, any allegation that any Defendant or Releasee has conspired with, aided and abetted, or otherwise acted in concert with any other Defendant, Releasee, or third parties, with regard to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters in the Litigation. It is the intention of the Class Representatives and each of the Releasors (as defined below) to provide a general release of all Released Claims against the Releasees, in accordance with Paragraph 10. Released Claims do not include claims, rights or causes of action or liabilities whatsoever: (i) to enforce the Settlement; and (ii) for breach or violation of any of

-18-

the terms of this Agreement or orders or judgments issued by the Court in connection with the Settlement or confidentiality obligations with respect to settlement communications.

1.48   "Releasees" or "The Releasees" mean Defendants, Bank of America, N.A., and each of their partners, affiliates, parent companies, subsidiaries, divisions, or other organizational units of any kind doing business in their own names, and doing business under any other names, any entity now or in the past controlled by, controlling, or under the common control with any of the foregoing and doing business under any other names, and any and all of their respective affiliates and subsidiaries, and each of their respective predecessors, successors, and assigns, and each of their past and present officers, directors, partners, shareholders, associates, trustees, employees, agents, attorneys (including any consultants hired by counsel), accountants, representatives, beneficial owners, investment advisors, investment bankers, insurers, independent contractors, heirs, executors, and administrators, and each of their respective predecessors, successors, and assigns.

1.49   "Releasors" mean the Class Representatives, all Monetary Relief Class Members who do not opt out, and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming by or through any or all of them.

1.50   "Second Amended Complaint" means the Class Action Complaint filed by Class Representatives on or about February 8, 2016 in the United States District Court for the Western District of North Carolina, Charlotte Division, No. 3:15-CV-00175-RJC-DCK.

1.51   "Settlement Claim Certification Form and Release" shall mean the form attached to the Class Notice, in the same or substantially in the form attached hereto as Exhibit 1-A.

-19-

1.52    "Settlement Class" means the collective group of all of the Monetary Relief Class Members who do not opt out of the Settlement pursuant to Section V, Paragraph 7.3 and all of the Injunctive Relief Class Members, and thus means the collective group of all of the Class Members who will become bound by the Judgment if the Effective Date occurs.

1.53    "Settlement Class Member" means any person who is a member of the Settlement Class.

1.54    "Settlement Formula" shall mean the formula used to calculate each Monetary Relief Class Member's Individual Gross Settlement Sum, as described in Paragraph 3.1.1.

1.55    "Settling Parties" mean Defendants and the Class Representatives on behalf of themselves and all Members of the Class.

1.56    "Settlement Payment Date" means the date, subject to Paragraph 8.5, within fourteen (14) days of and only after the Effective Date when Defendants, through the Claims Administrator, shall pay to each Participating Claimant his or her respective Individual Net Settlement Sum, defined above.

1.57    "Stipulation Execution Date" shall mean the date upon which the last signatory executes this Stipulation.

1.58    "Total Gross Settlement Sum" means the total aggregate amount of Class Members' Individual Gross Settlement Sums, as defined above and as calculated pursuant to the Settlement Formula.

1.59    "Unknown Claims" mean any Released Claims which any Class Representative or any Settlement Class Member does not know or suspect to exist in his or her favor at the time of the entry of the Judgment, and which, if known by him or her might have

-20-

affected his or her settlement with and release of the Releasees, or might have affected his or her decision to opt out of the Settlement Class or to object to this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Class Representatives shall expressly and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have to the fullest extent allowed by law, waived the provisions, rights and benefits of any statute or principle of common law similar to California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Class Representatives and each Settlement Class Member may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released Claims, but Class Representatives and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released to the fullest extent allowed by law any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, contract, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Representatives acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material term of the settlement of which this release is a part.

-21-

1.60 "Unpaid ATP Bonus Amount" means the amount in ATP Service Award Payments that would have been paid after the date of a Class Member's termination of employment without cause pursuant to the ATP and its amendment.

1.61 "Updated Address" means a mailing address that was updated via a Reasonable Address Verification Measure or via an updated mailing address provided by the United States Postal Service or a Class Member.

1.62 "Wealthbuilder" means the Merrill Lynch Wealthbuilder Account Plan.

1.63 "Yellen" means James Yellen, Esq.

2. Certification of Class.

2.1 After Defendants' review and approval, Class Counsel, on behalf of the Class Representatives, shall file a motion requesting that the Court certify a class for settlement purposes only and approve the Settlement for the Class, as defined in ¶ 1.10, and in accordance with ¶ 5.3.

2.2 If Defendants exercise a right herein to terminate or rescind this Agreement or this Agreement is not approved by the Court, this Agreement, the conditional class certification provided herein, the settlement proposed herein (including any modifications made with the consent of the Settling Parties), and any action taken or to be taken in connection therewith shall be terminated and shall become null and void and have no further force or effect, the Preliminary Approval Order shall be vacated (except for any provision included in the Preliminary Approval Order substantially similar to Paragraph 22 of the Proposed Preliminary Approval Order attached as Exhibit 1), the Settling Parties shall be restored to their respective positions existing prior to the execution of this Agreement, and the Settling Parties' rights and obligations with respect to the use of this Agreement and the settlement contemplated hereby

-22-

will be subject to Sections II and III hereof. In addition, if Defendants exercise their right herein to terminate or rescind this Agreement or this Agreement is not approved by the Court, neither this Agreement, the preliminary certification of the Class for settlement purposes only, the Preliminary Approval Order, nor any other document in any way relating to any of the foregoing, shall be relied on, or used by anyone in any way for any purpose in connection with any further proceedings in this Litigation and/or any action, lawsuit, arbitration, or proceeding involving a Released Claim. Notwithstanding the foregoing, Defendants may use, offer, admit, or refer to the Stipulation and to the settlement reached therein where necessary to defend themselves in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding.

      2.3     In the event that this Agreement shall terminate or the settlement embodied herein does not become effective for any reason, the Agreement and all negotiations, court orders and proceedings relating thereto shall be without prejudice to the rights of the Settling Parties, and each of them, who shall be restored to their respective positions existing prior to the execution of this Agreement, and evidence relating to the Agreement and all negotiations shall not be discoverable or admissible in the Litigation or otherwise.

3.     Payments to Participating Claimants.

      3.1     *Allocation of the Total Gross Settlement Amount and Payment to Participating Claimants*

      3.1.1    Due to, among other things, the differing relative strengths of the claims of each Class Member and other relevant factors (including, without limitation, date of involuntary termination), the Parties have developed a Settlement Formula, as described below, for allocating the Total Gross Settlement Amount among the Monetary Relief Class Members and calculating the Individual Gross Settlement Sums of the Monetary Relief Class Members covered by this Agreement. The Settlement Formula is as follows:

-23-

(a)     For Class Members involuntarily terminated between March 5, 2009 and the Preliminary Approval Date = (75% of each Participating Claimant's unpaid FACAAP, Growth, Wealthbuilder, and LTICP Plan Values granted in the years prior to and including 2008) plus (50% of each Participating Claimant's unpaid FACAAP, Growth, and Wealthbuilder Plan Values granted in 2009 for performance year 2008, if the Participating Claimant was involuntarily terminated on or after February 13, 2009) plus (25% of each Participating Claimant's Unpaid ATP Bonus Amounts at the time of termination).

(b)     For Class Members involuntarily terminated between January 1, 2009 and March 4, 2009 = (37.5% of each Participating Claimant's unpaid FACAAP, Growth, Wealthbuilder, and LTICP Plan Values granted in the years prior to and including 2008) plus (25% of each Participating Claimant's unpaid FACAAP, Growth, and Wealthbuilder Plan Values granted in 2009 for performance year 2008, if the Participating Claimant was involuntarily terminated on or after February 13, 2009) plus (12.5% of each Participating Claimant's Unpaid ATP Bonus Amounts at the time of termination).

(c)     For Class Members involuntarily terminated between January 1, 2009 and the Preliminary Approval Date who previously released claims related to the Plans and/or ATP as determined by the parties in a settlement agreement with Defendants and who received monetary consideration in connection with his or her release = (31% of the Settlement Formula described in Paragraph 3.1.1(a) above), less (25% of the total as a deduction for attorneys' fees and 31% of the monetary amount received as consideration for the prior release), or, if greater, $1000.

(d)     For Class Members involuntarily terminated between January 1, 2009 and the Preliminary Approval Date who previously released claims related to the Plans

-24-

and/or ATP as determined by the parties in a settlement agreement with Defendants and who received no monetary consideration in connection with his or her release = (45% of the Settlement Formula described in Paragraph 3.1.1(a) above).[3]

       3.1.2   Defendants, through the Claims Administrator, and according to the terms, conditions, and procedures set forth in this Section V of this Agreement, including Paragraph 8.5, shall pay each Participating Claimant his or her Individual Net Settlement Sum, as defined in Paragraph 1.25. To the extent administratively convenient, these payments shall be paid via one check with a stub that includes tax withholding information to each Participating Claimant. Notwithstanding the foregoing, no payments will be due and payable until fourteen (14) days after the Effective Date, as set forth in ¶ 8.1.

       3.1.3   The data as provided by Defendants upon which the Settlement Formula is based, including the date on which a Class Member's employment was involuntarily terminated, shall be deemed accurate upon Class Counsel's receipt of all confirmatory data and verification from Defendants to Class Counsel that the data is accurate, correct, and complete to the best of Defendants' knowledge and ability. Any confirmatory data provided to Class Counsel following Preliminary Approval shall be the same type of data as was previously provided for other Class Members. A Participating Claimant may dispute his or her Plan Values, if any, the value of Unpaid ATP Bonus Amounts, if any, termination data, and/or the Settlement Formula applicable to such individual by providing to the Claims Administrator prior to the Notice Response Deadline documentary evidence that the information provided by Defendants is inaccurate. The

---

[3] Individuals who signed releases where the individual or Defendants were represented by counsel for the Settling Parties in this Litigation and individuals who received greater monetary amounts as consideration for his or her release than they would have received under the Settlement Formula are not Class Members in this Litigation.

Claim Administrator shall provide such documentary evidence to Defendants and Class Counsel, provided that the Claims Administrator abides by the provisions of Paragraph 6.8 and that Class Counsel shall not receive the name or contact information of any Class Member. Defendants shall review the documentary evidence provided by the Participating Claimant in good faith and as expeditiously as possible, and shall notify the Claims Administrator and Class Counsel in writing of any change to the Participating Claimant's Individual Gross Settlement Sum or that no change will be made. If the Participating Claimant does not provide documentary evidence supporting his or her dispute, the dispute shall be denied. Following Defendants' review and determination, if the Participating Claimant still wants to dispute their Plan Value or the value of Unpaid ATP Bonus Amounts, if any, and/or the Settlement Formula applicable to such individual, the Participating Claimant must inform the Claims Administrator of his or her desire to have the dispute reviewed by Yellen within five (5) business days of notification by the Claims Administrator to the Participating Claimant of the results of Defendants' review of the Participating Claimant's dispute. Yellen will have authority to make a final and binding decision, as to the Settling Parties and Releasees, with respect to the correctness of the data, including, but not limited to, the Participating Claimant's Individual Gross Settlement Sum and Individual Net Settlement Sum. Nothing in this Paragraph shall be construed to extend the Notice Response Deadline for any Class Member. Defendants will pay the reasonable cost of Yellen's review of disputes under this Paragraph, and such payment constitutes additional consideration to the Class.

3.1.4    As further detailed in Paragraph 3.2, and for each payment made pursuant to this Agreement including without limitation those made pursuant to Paragraph 3.1 of this Section V, Defendants, through the Claims Administrator, will report each payment to

Case 3:15-cv-00175-RJC-DCK   Document 37-1   Filed 02/08/16   Page 28 of 72

government authorities including the Internal Revenue Service as required by law, and it shall make the required deductions and/or withholdings as described in Paragraph 3.2.

3.1.5   Each check issued to a Participating Claimant shall contain an endorsement as follows: "By accepting this check, I confirm my acceptance of the release stated in the Class Notice," or similar language. The acceptance of the settlement check by a Participating Claimant shall constitute an acceptance of the release as stated in the Class Notice and Paragraph 10 of the Stipulation.

3.2   *Taxes*

3.2.1   The Individual Gross Settlement Sum of each Participating Claimant: (a) shall be subject to required employee's share of taxes and withholding required by law that will be deducted from the Individual Gross Settlement Sum of each Participating Claimant; and (b) shall be subject to deduction for attorneys' fees and costs in the percentage and amount that the Court approves. Other than as set forth above, Defendants will not, unless otherwise required by law, make, from the Individual Gross Settlement Sum of each Participating Claimant, any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, or charity withholdings, and entry of the Order of Final Approval by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments.

3.2.2   Other than the withholding and reporting requirements set forth in Section V, Paragraphs 3.1.4 and 3.2.1, Class Members shall be solely responsible for the reporting and payment of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Section V of this Agreement. Defendants make no representations and it is understood and agreed that Defendants have made

-27-

no representations as to the taxability of any of the payments made pursuant to this Section V of this Agreement, the payment of any costs or an award of attorney fees, or any payments to the Class Representatives. The Class Notice and Programmatic Relief Notice will advise Class Members to seek their own tax advice prior to acting in response to that notice, and the Class Representatives and Class Counsel agree that Class Members will have an adequate opportunity to seek tax advice prior to acting in response to the Class Notice.

3.2.3   The Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to or arising out of the investment, allocation, or distribution of the Individual Gross Settlement Sums, the determination, administration, calculation, or payment of award amounts or claims, the payment or withholding of taxes, or any losses incurred in connection therewith. No person shall have any claim against the Releasees, Class Counsel, or any other agent designated pursuant to this Agreement based upon the distributions made substantially in accordance with this Agreement or any order of Court.

3.3   *Programmatic Relief*

3.3.1   Plaintiffs allege that Merrill Lynch did not follow the contractual procedures required to properly forfeit Class Members' unvested awards in one or more of the Plans for a termination for Cause as defined in the Plans – a claim that Defendants deny in its entirety. *See* Second Amended Complaint ¶¶ 17, 43-47. The Parties have investigated and analyzed the facts and circumstances concerning the contractual procedures set forth in the Plans, and agree that certain aspects of the Plans are no longer administratively feasible (*e.g.*, the Merrill Lynch Board of Directors no longer exists) and/or require clarification. To minimize future disputes regarding Plan forfeitures and to clarify the definition of Cause, the Parties have therefore agreed to the following prospective review process for the purpose of determining

-28-

whether an Injunctive Relief Class Member's outstanding awards will be forfeited following his/her Cause Termination (as defined in Paragraph 3.3.3 below). With the exception of the provisions in this Paragraph 3.3 and the definition of FACAAP in Paragraph 1.19, nothing in this Stipulation or the Settlement shall impact the Key Associate Stock Plan or awards made pursuant to the Key Associate Stock Plan. This Programmatic Relief constitutes additional consideration to the Class.

3.3.2 For any involuntary termination involving an Injunctive Relief Class Member following the Preliminary Approval Date, Merrill Lynch will implement the following procedure with respect to any unvested award(s) granted to an Injunctive Relief Class Member under FACAAP and/or WealthBuilder.

3.3.3 **Definition of "Cause."** For purposes of the Programmatic Relief set forth in this Paragraph 3.3 only, the termination of an Injunctive Relief Class Member by Merrill Lynch for "Cause" shall mean a termination based on the Injunctive Relief Class Member's:

(a) Willful violation of any Federal Securities laws, rules or regulations;

(b) Willful violation of any rules or regulations of any regulatory or self-regulatory organization, including, but not limited to, the Securities Exchange Commission, FINRA, the National Securities Exchanges, and the Federal Deposit Insurance Corporation;

(c) Conviction or plea of *nole contendere* for any criminal conduct that could result in statutory disqualification or harm to Merrill Lynch's reputation;

(d) Commitment of fraud or wrongful taking possession of property;

(e) Suspension or other limitation with respect to the Injunctive Relief Class Member's activities by any regulatory or self-regulatory organization, including, but not

-29-

limited to, the Securities Exchange Commission, FINRA, the National Securities Exchanges, and the Federal Deposit Insurance Corporation;

(f)     Willful engagement in conduct which is demonstrably and materially injurious to the Company, monetarily or otherwise; or

(g)     Willful and continual failure to substantially perform duties of employment with Merrill Lynch (other than such failure resulting from incapacity due to physical or mental illness or any such actual or anticipated failure resulting from termination for Good Reason) after a written demand for performance provided by Merrill Lynch. No act or failure is deemed "willful" unless done or omitted to be done, not in good faith and without reasonable belief that the action or omission was in the best interest of Merrill Lynch.

3.3.4   **Initial Forfeiture Determination**. Within thirty (30) days of an Injunctive Relief Class Member's date of involuntary termination, Merrill Lynch will make an initial determination as to whether the Injunctive Relief Class Member's unvested award(s) under FACAAP and/or WealthBuilder should be forfeited due to the Injunctive Relief Class Member's Cause Termination (the "Initial Determination"). If Merrill Lynch determines that an Injunctive Relief Class Member's unvested awards should be forfeited, Merrill Lynch shall notify the Injunctive Relief Class Member in writing and inform him/her of the Initial Determination and the procedures set forth in this Paragraph 3.3 for contesting the Initial Determination (the "Initial Determination Notice"). An Initial Determination by Merrill Lynch to forfeit an Injunctive Relief Class Member's unvested awards shall not have precedential effect during a proceeding by the Injunctive Relief Class Member to contest the Initial Determination before the Neutral or Plan Administrator; review by the Neutral or Plan Administrator shall be de novo.

-30-

3.3.5    **Contesting the Initial Determination.**  If an Injunctive Relief Class Member wishes to contest the Initial Determination, the Injunctive Relief Class Member shall have one hundred twenty (120) days from his/her receipt of the Initial Determination Notice to submit a written statement and provide additional information (the "Submission") to the Neutral and/or Plan Administrator in accordance with Paragraphs 3.3.6 and 3.3.7.  The Initial Determination Notice will include the applicable contact information for the Neutral and/or Plan Administrator and instructions regarding how the Injunctive Relief Class Member can contest the Initial Determination, including the Neutral and Plan Administrator's name and contact information.

3.3.6    **Contesting an Initial Determination Regarding Unvested FACAAP Awards.**

(a)    If an Injunctive Relief Class Member contests an Initial Determination involving his/her unvested FACAAP award(s), the Submission shall be provided to the Neutral.  The Neutral shall thereafter provide notice to the Injunctive Relief Class Member that he/she has the right to counsel during this process to be paid at the Injunctive Relief Class Member's own expense.  The Neutral may request additional information from the Injunctive Relief Class Member or Merrill Lynch.  The Injunctive Relief Class Member or Merrill Lynch may request a telephone or in-person meeting with the Neutral, which may include their respective counsel, but there is no obligation to attend in person for those who choose not to and there is no obligation for the Neutral to agree to conduct an in-person meeting.  The Neutral may also request a telephonic or in-person meeting with the Injunctive Relief Class Member or Merrill Lynch, which may include their respective counsel, but there is no obligation to attend in person for those who choose not to.

-31-

(b)　The Neutral shall render a written decision within forty-five (45) days of Merrill Lynch's receipt of the Submission. If the Neutral finds that the Injunctive Relief Class Member's unvested award(s) should be forfeited due to his/her Cause Termination: (i) the decision shall identify the conduct set forth in Paragraph 3.3.3 on which the decision is based and specify the particulars thereof; and (ii) the Injunctive Relief Class Member's FACAAP award(s) will be forfeited.

### 3.3.7　Contesting an Initial Determination Regarding Unvested WealthBuilder Awards.

(a)　If an Injunctive Relief Class Member contests an Initial Determination involving an unvested WealthBuilder award(s), the Submission shall be provided to the Plan Administrator. The Plan Administrator shall thereafter provide notice to the Injunctive Relief Class Member that he/she has the right to counsel during this process to be paid at the Injunctive Relief Class Member's own expense. The Plain Administrator may request additional information from the Injunctive Relief Class Member or Merrill Lynch. The Injunctive Relief Class Member or Merrill Lynch may request a telephone or in-person meeting with the Plan Administrator, which may include their respective counsel, but there is no obligation to attend in person for those who choose not to and there is no obligation for the Plan Administrator to agree to conduct a telephone or in-person meeting. The Plan Administrator may also request a telephonic or in-person meeting with the Injunctive Relief Class Member or Merrill Lynch, which may include their respective counsel, but there is no obligation to attend in person for those who choose not to.

(b)　The Plan Administrator shall render a written decision within forty-five business (45) days of Merrill Lynch's receipt of the Submission. If the Plan

Administrator finds that Injunctive Relief Class Member's unvested award(s) should be forfeited due to his/her Cause Termination (as defined above), the decision shall set forth: (i) the specific reason or reasons for the decision; (ii) identify the conduct set forth in Paragraph 3.3.3 on which the determination is based; (iii) a description of any additional material or information necessary for the Injunctive Relief Class Member to perfect his or her claim and an explanation of why it is necessary; and (iv) a description of the procedure for appealing the Plan Administrator's decision, including a statement of the Injunctive Relief Class Member's right to bring claims, including a claim under Section 502(a) of the Employment Retirement Income Security Act of 1974 ("ERISA), in an appropriate forum with jurisdiction.

        (c)    **The WealthBuilder Appeal Process.** The Injunctive Relief Class Member (or his/her counsel) shall have sixty (60) days from his/her receipt of the Plan Administrator's decision to file an appeal to the Plan Administrator by filing a written request for review. The Injunctive Relief Class Member may submit written comments, documents, records and other information relating to the claim and shall be provided, upon request, reasonable access to all documents, records and other information relevant to his/her claim. The Plan Administrator will render a final, written decision within sixty (60) days of the date the appeal is submitted. If the Plan Administrator finds that Injunctive Relief Class Member's unvested award(s) should be forfeited due to his/her Cause Termination (as defined above), the Injunctive Relief Class Member's WealthBuilder award(s) will be forfeited and the decision shall set forth: (i) the specific reason or reasons for the decision; (ii) identify the conduct set forth in Paragraph 3.3.3 on which the determination is based; (iii) a statement that the Injunctive Relief Class Member is entitled to receive upon request reasonable access to and copies of all documents, records and other information relevant to the claim; and (iv) a description of the procedure for

-33-

appealing the Plan Administrator's decision, including a statement of the Injunctive Relief Class Member's right to bring claims, including a claim under Section 502(a) of ERISA, in an appropriate forum with jurisdiction.

      3.3.8  **Contesting an Initial Determination Regarding Unvested FACAAP and Unvested WealthBuilder Awards.**  If an Injunctive Relief Class Member contests an Initial Determination involving both an unvested FACAAP and an unvested WealthBuilder award(s), the Submission shall be provided to both the Neutral and the Plan Administrator. The Neutral shall review the Injunctive Relief Class Member's claim with respect to the unvested FACAAP award(s) in accordance with the procedures set forth in Paragraph 3.3.6, while the Plan Administrator shall review the Injunctive Relief Class Member's claim with respect to the unvested Wealthbuilder award(s) in accordance with the procedures set forth in Paragraph 3.3.7. A decision by the Neutral or the Plan Administrator shall have no binding or precedential effect on the other.

      3.3.9  Upon any finding by Merrill Lynch or the Neutral that the Injunctive Relief Class Member's FACAAP award(s) will not be forfeited due to his/her Cause Termination (as defined above), the Injunctive Relief Class Member's FACAAP award(s) will be vested and paid out in accordance with the payment schedule set forth in the applicable award agreement. Upon any finding by Merrill Lynch or the Plan Administrator that the Injunctive Relief Class Member's Wealthbuilder award(s) will not be forfeited due to his/her Cause Termination (as defined above), the Injunctive Relief Class Member's Wealthbuilder award(s) will be vested, accelerated and paid out in a cash lump-sum payment within thirty (30) days of that finding.

      4.    <u>Payment of Outstanding ATP Note Balances for Participating Claimants</u>

      4.1    Based on the provision in the ATP Promissory Note providing that, "[t]o the extent permitted by law, the Lender shall be entitled to apply as an offset against the

-34-

undersigned's repayment obligations hereunder, if such obligations are not satisfied in full when due, any other amounts owed by the Lender or any of its affiliates to the undersigned," a Participating Claimant's Outstanding ATP Note Balance shall be reduced by the ATP Setoff Amount, notwithstanding anything to the contrary contained in this Agreement. Both the Outstanding ATP Note Balance and estimated ATP Setoff Amount shall be stated on the Participating Claimant's Claim Form, along with the estimated Individual Gross Settlement Sum.

4.2     If a Participating Claimant's Outstanding ATP Note Balance is less than the Participating Claimant's ATP Setoff Amount, the Outstanding ATP Note Balance shall be deducted from the ATP Setoff Amount, and the Participating Claimant shall receive the difference between the ATP Setoff Amount and the Outstanding ATP Note Balance as the Participating Claimant's Individual Net Settlement Sum.

4.3     If a Participating Claimant's Outstanding ATP Note Balance is more than the Participating Claimant's ATP Setoff Amount, the Participating Claimant must pay the entire Outstanding ATP Note Balance, less the amount of the Participating Claimant's ATP Setoff Amount, on or before the Settlement Payment Date or other date agreed to by the Parties or decided by Yellen, in order to have his or her ATP Settlement Amount included in the ATP Setoff Amount.

4.4     Following a Participating Claimant's repayment of the Outstanding ATP Note Balance, Defendants will provide a release or satisfaction of claims related to the Participating Claimant's ATP note balance (or related claims). To the extent that Defendants have frozen or suspended a Participating Claimant's Merrill Lynch or Bank of America account as a result of the Participating Claimant's non-payment of the Outstanding ATP Note Balance, such account will be released following the Participating Claimant's payment of his or her

-35-

Outstanding ATP Note Balance. If the ATP Note Balance is not paid in full as agreed to by the Parties or decided by Yellen, Defendants expressly retain any and all rights regarding collection of a Participating Claimant's unpaid Outstanding ATP Note Balance, including freezing or suspending the Participating Claimant's Merrill Lynch or Bank of America account.

      4.5    A Participating Claimant who disputes the amount of the Outstanding ATP Note Balance payable can elect to participate in the ATP Mediation with Yellen regarding the note repayment and to raise any legal defenses to repayment of the Outstanding ATP Note Balance. Participating Claimants must inform the Claims Administrator that he or she is electing to participate in the ATP Mediation within thirty (30) days of the Notice Mailing Date. The Claims Administrator shall then inform Yellen and counsel for the Settling Parties of the Participating Claimant's election to participate in the ATP Mediation as soon as practicable. ATP Mediation shall take place at least fourteen (14) days prior to the Notice Response Deadline to the extent possible. The Participating Claimant may elect to be represented by Class Counsel or other counsel during the ATP Mediation and may submit a written statement or other documentary evidence to Yellen no later than five (5) days prior to the ATP Mediation. The ATP Mediation may be conducted telephonically or in person in New York City at the offices of Defendants' counsel, with all travel expenses for the Participating Claimant and his or her counsel, if any, to be paid by the Participating Claimant. To the extent possible, Yellen shall decide, and the Claims Administrator shall notify the Participating Claimant and counsel for the Settling Parties, in writing, forty-eight (48) hours after the ATP Mediation whether the entire Outstanding ATP Note Balance or a lesser amount is owed. Nothing in this Paragraph shall be construed to extend the Notice Response Deadline for any Class Member. Defendants will pay

Yellen's reasonable fees for the review of disputes under this Paragraph, and such payment constitutes additional consideration to the Class.

4.6     If a Participating Claimant is dissatisfied with the outcome of the ATP Mediation, he or she can opt out of the Class by following the procedures set forth in Paragraph 7.3, will not receive his or her Individual Gross Settlement Sum, and will not be bound by the Release. In addition, the Participating Claimant's entire Outstanding ATP Note Balance shall remain outstanding.

4.7     If a Participating Claimant does not opt out of the Class following the ATP Mediation, he or she must pay either the Outstanding ATP Note Balance or lesser amount decided by Yellen, by the Settlement Payment Date or other date agreed to by the Parties or decided by Yellen, in order to receive his or her ATP Settlement Amount. Defendants shall retain all applicable rights to collect any Class Member's entire Outstanding ATP Note Balance if the Participating Claimant does not abide by the terms of any agreement regarding note repayment reached during the ATP Mediation. Outstanding non-ATP related promissory or other note obligations due and owing to Defendants shall remain unaffected by the Settlement. Any Participating Claimant who opts out pursuant to this Paragraph shall not be considered an Opt Out for purposes of Paragraphs 12.1 and 14.2 below.

4.8     If Yellen determines that a Participating Claimant must pay an amount less than the Outstanding ATP Note Balance, the difference between the Outstanding ATP Note Balance and the amount decided by Yellen shall be forgiven, and Defendants, themselves or through the Claims Administrator, shall report the forgiveness amount to the appropriate tax authorities on IRA Form 1099-C, to be issued by Defendants in the tax year in which all obligations owed by the Participating Claimant to Defendants are satisfied. The Participating

-37-

Claimant is responsible for any tax consequences incurred by him or her that may be associated with note forgiveness pursuant to this Paragraph.

    5.    <u>Court Approval of Notice to the Class and Final Approval Hearing.</u>

    5.1    The Class Representatives and their counsel shall, after Defendants review and approval, promptly move the Court in the pending Litigation for a Preliminary Approval Order substantially similar to Exhibit 1 that accomplishes the following:

    5.1.1    Preliminarily certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

    5.1.2    Preliminarily approving this Agreement as fair, reasonable, and adequate under Rule 23 of the Federal Rules of Civil Procedure subject to final determination by the Court;

    5.1.3    Approving the appointment of the Class Representatives as representatives of the Class for settlement purposes;

    5.1.4    Approving the appointment of Class Counsel as counsel for the Class for settlement purposes;

    5.1.5    Approving Rust Consulting as the Claims Administrator;

    5.1.6    Approving the Settlement Formula;

    5.1.7    Approving a form of mailed notice substantially similar to the Class Notice as shown in Exhibit 1-A to be sent to Monetary Relief Class Members and mailed notice substantially similar to the Programmatic Relief Notice as shown in Exhibit 1-B to be sent to Injunctive Relief Class Members;

    5.1.8    Directing Defendants and/or the Claims Administrator to mail the Class Notice and the Programmatic Relief Notice no more than thirty (30) days after entry by the Court

-38-

of the Preliminary Approval Order, to the Class by first-class mail to the Last Known Address of Class Members;

5.1.9    Establishing a procedure for Monetary Relief Class Members to file a Settlement Claim Certification Form and Release, approximately seventy-five (75) days after the mailing of the Class Notice.

5.1.10   Establishing a procedure for Monetary Relief Class Members to Opt Out and setting a date, approximately seventy-five (75) days after the mailing of Class Notice, after which no Member of the Class shall be allowed to Opt Out of the Settlement Class;

5.1.11   Establishing a procedure for Settlement Class Members to appear and/or object to the Settlement and setting a date, provided that any Monetary Relief Class Member in the Settlement Class has not opted out, approximately seventy-five (75) days after the mailing of Class Notice, after which no Settlement Class Member shall be allowed to object;

5.1.12   Staying all proceedings in the Litigation against the Defendants, other than proceedings as may be necessary to carry out the terms and conditions of the Agreement;

5.1.13   Pending Final Approval, and upon expiration of the Notice Response Deadline, preliminarily enjoining each Monetary Relief Class Member in the Settlement Class from maintaining, commencing, prosecuting, or pursuing either directly, representatively, or in any other capacity any Released Claim subsumed and covered by the Release in this Agreement in any court or arbitration forum, including, but not limited to, FINRA, AAA, or JAMS;

5.1.14   Scheduling a Final Approval Hearing for final approval of this Agreement;

5.1.15   Setting a deadline for Class Representatives to file their motions for final approval of the settlement and for attorney's fees, costs and plaintiff enhancements; and,

5.1.16 Containing such other and further provisions consistent with the terms and provisions of this Agreement as the Court may deem advisable.

5.2 Promptly after execution of the Agreement and subject to Paragraph 5.3, the Class Representatives shall file the motion for entry of the Preliminary Approval Order described in Paragraph 5.1 with the Court. Failure of the Court to enter the Preliminary Approval Order in its entirety or in a similar form without material changes thereto as determined by Defendants will be grounds for Defendants to terminate the settlement and the terms of this Agreement in accordance with Paragraph 14 below.

5.3 Class Counsel shall prepare and file a motion for preliminary approval of the Stipulation. Such motion shall be provided to Defendants no less than fourteen (14) days prior to its filing with the Court. Class Counsel must receive Defendants' consent prior to filing the motion with the Court.

5.4 At Defendants' direction and pursuant to 28 U.S.C. § 1715, the Claims Administrator shall notify the applicable governmental and regulatory authorities in writing of the existence of this Settlement. The Claims Administrator shall document all efforts under this Paragraph, and shall provide the Court, Class Counsel, and Defendants' counsel with a declaration certifying its compliance no later than five (5) business days after such mailing is complete. Wherever necessary or appropriate, Class Counsel and Defendants will assist the Claims Administrator by providing information which is necessary for the preparation of the notice required by this Paragraph. Said notice shall include to the extent then available:

5.4.1 All current and former complaints in the Litigation and material accompanying those complaints;

5.4.2 A schedule of upcoming judicial hearings, if any, in the Litigation;

-40-

5.4.3   The then-current Class Notice;

5.4.4   A true and correct copy of this Agreement;

5.4.5   Any other agreements between Class Counsel and attorneys for Defendants regarding this settlement;

5.4.6   An estimate of the number of members of the Settlement Class (and their names, if feasible) who reside in the jurisdiction of the entity or agency receiving the Class Notice;

5.4.7   The estimated proportionate share of the entire settlement being offered to the individuals who reside in the jurisdiction of the entity or agency receiving the Class Notice (after it has been determined by the Settlement Formula); and

5.4.8   Any written judicial opinion or order of this Court relating to Paragraphs 5.4.3 through 5.4.7.

Notwithstanding the foregoing, Defendants understand and agree that, as the settling defendants, they are ultimately responsible for notifying the appropriate federal and state officials pursuant to 28 U.S.C. § 1715.

6.   Notice to Class Members.

6.1   If, by preliminarily approving the settlement, the Court provides authorization to send the Class Notice and Settlement Claim Certification Form and Release (attached as Exhibit 1-A hereto) to Monetary Relief Class Members, and the Programmatic Relief Notice (attached hereto as Exhibit 1-B) to Injunctive Relief Class Members, Defendants, through their counsel of record and/or the Claims Administrator, will facilitate the mailing by the Claims Administrator to all Monetary Relief Class Members at their Last Known Addresses of the Class Notice and to all Injunctive Relief Class Members at their Last Known Addresses of

the Programmatic Relief Notice. The Class Notice and Programmatic Relief Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid.

6.2     In the motion for preliminary approval, the Class Representatives and Defendants shall request permission from the Court to send the Class Notice to Class Members directly to all Monetary Relief Class Members at their Last Known Address, whether or not those Class Members are represented by separate counsel, and to send the Programmatic Relief Notice to Injunctive Relief Class Members at their Last Known Address. In addition, the Class Representatives and Defendants shall request permission from the Court to send all known counsel of Monetary Relief Class Members, other than Class Counsel, a sample copy of the Class Notice and Settlement Claim Certification Form and Release to inform them of the Settlement and the Class Members' receipt of the same.

6.3     This Class Notice and its envelope or covering shall be marked to denote the return address of the Claims Administrator.

6.4     Within ten (10) calendar days of the Court's entry of the Preliminary Approval Order, Defendants shall provide the Claims Administrator and Class Counsel with the date of involuntary termination, Individual Gross Settlement Sums, Outstanding ATP Note Balances and ATP Setoff Amounts, as well as the class ID number for each eligible Monetary Relief Class Member. Additionally and within ten (10) calendar days of the Court's entry of the Preliminary Approval Order, Defendants will provide the Claims Administrator with the most recently recorded identification and address information for Class Members, as such information is contained in employment or personnel records maintained by Defendants, including, but not limited to, name, date of birth, address, telephone number, and social security number. Class

-42-

Representatives and Defendants shall request permission from the Court to provide Class Members' social security numbers to the Claims Administrator.

6.5    Prior to mailing the Class Notice to each Monetary Relief Class Member and the Programmatic Relief Notice to each Injunctive Relief Class Member, the Claims Administrator shall undertake a Reasonable Address Verification Measure to ascertain the current accuracy of the Last Known Address of each Class Member. To the extent this process yields an Updated Address, that Updated Address shall replace the Last Known Address and be treated as the new Last Known Address for purposes of this Agreement and for subsequent mailings in particular.

6.6    The Settlement Claim Certification Form and Release shall include the Individual Gross Settlement Sum for each Monetary Relief Class Member and the Outstanding ATP Notice Balance and estimated ATP Setoff Amount, if applicable.

6.7    Class Notice and Programmatic Relief Notice shall be sent exclusively by the Claims Administrator. Class Counsel and Class Representatives agree not to issue notice of the settlement to Class Members other than the Class Notice and Programmatic Relief Notice issued through the Claims Administrator pursuant to this Agreement.

6.8    Class Counsel shall not have access to Class Members' names and contact information, unless (i) contacted by the Class Member, (ii) the Class Member seeks legal counsel through the Claims Administrator, or (iii) Class Counsel has a signed retention agreement with the Class Member. Class Counsel is not limited in providing legal advice to Class Members. The Claims Administrator agrees not to disclose information regarding Class Members' contact information and any and all information provided by Defendants to the Claims Administrator for

-43-

the purpose of effectuating notice mailing to anyone external to the Claims Administrator, including Class Counsel or Class Representatives, without the written consent of Defendants.

6.9     Unless the parties agree otherwise in writing or the Court so orders, the Class Notice and Programmatic Relief Notice shall be mailed to the Last Known Addresses or Updated Addresses of the Class Members no later than the Notice Mailing Date.

6.10    Following the mailing of the Class Notice and Programmatic Relief Notice, the Claims Administrator shall provide counsel for the Settling Parties with, and file with the Court, written confirmation of this mailing.

6.11    Defendants shall be responsible for the costs of the mailing described in Paragraph 6.1, which shall include the reasonable fees charged by the Claims Administrator, the cost of the envelope in which the Class Notice and Programmatic Relief Notice will be mailed, the cost of reproducing the Class Notice and Programmatic Relief Notice, and the cost of postage to send the Class Notice and Programmatic Relief Notice. The Class Representatives acknowledge that Defendants' agreement to pay the claims administration and mailing costs constitutes additional consideration to the Class.

6.12    Unless the Claims Administrator receives a Class Notice or Programmatic Relief Notice returned from the United States Postal Service for reasons discussed below in this Paragraph, that Class Notice or Programmatic Relief Notice shall be deemed mailed and received by the Class Member to whom it was sent five (5) days after mailing. In the event that subsequent to the first mailing of a Class Notice and prior to the Notice Response Deadline, a Class Notice is returned to the Claims Administrator by the United States Postal Service with a forwarding address for the recipient, the Claims Administrator shall re-mail the Class Notice to that address, the Class Notice will be deemed mailed at that point, and the forwarding address

-44-

shall be deemed the Updated Address for that Class Member. In the event that subsequent to the first mailing of a Class Notice, and at least seven (7) days prior to the Notice Response Deadline, that Class Notice is returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, the Claims Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator will promptly re-send the Class Notice; if no Updated Address is obtained for that Class Member, the Class Notice shall be sent again to the Last Known Address. In either event, the Class Notice shall be deemed received by the Class Member once it is mailed for the second time. Nothing in this Paragraph shall be construed to extend the Notice Response Deadline for any Class Member.

    6.13 If the claims filing rate for the Monetary Relief Class is less than 50% fourteen (14) days prior to the Notice Response Deadline, the Claims Administrator shall attempt to call Monetary Relief Class Members who have not responded to the Class Notice at the Class Member's last known phone number to inquire whether the Class Member received the Class Notice, and if the Class Member states that he or she did not receive the Class Notice, the Class Notice shall be sent again to the new address or email address provided by the Class Member call recipient.

    7.  <u>Responses to the Class Notice and Programmatic Relief Notice; Motion for Final Approval</u>.

    7.1 Class Members have the option to participate in this Litigation at their own expense by obtaining their own attorney(s). Class Members who choose this option will be responsible for any attorneys' fees or costs incurred as a result of this election. The Class Notice and Programmatic Relief Notice will advise Class Members of this option.

-45-

7.2    Monetary Relief Class Members may elect to become Participating Claimants. Monetary Relief Class Members who wish to exercise this option and certify their entitlement to payment under the settlement must fully complete, execute and return, per the instructions therein, the form entitled "Settlement Claim Certification Form and Release" mailed with the Class Notice. If a completed and properly executed Settlement Claim Certification Form and Release is not received from a Monetary Relief Class Member on or before the Notice Response Deadline, then that Class Member will be deemed to have forever waived his or her right to be a Participating Claimant and receive payment under this settlement. If a Monetary Relief Class Member submits a timely Settlement Claim Certification Form and Release, but that form is defective or incomplete, or the Monetary Relief Class Member's intent is otherwise unclear, the Claims Administrator shall contact the Monetary Relief Class Member and ask the Monetary Relief Class Member to cure the deficiency. If they do not properly and timely submit an Opt Out Statement pursuant to Paragraph 7.3, Monetary Relief Class Members who do not submit Settlement Claim Certification Forms and Releases in a timely and proper fashion shall be deemed Members of the Settlement Class and shall be subject to the Judgment, shall be deemed to have released all Released Claims, and shall not receive his or her Individual Gross Settlement Sum.

7.3    Monetary Relief Class Members may elect to Opt Out of the Settlement Class and thus exclude themselves from the Litigation and the Settlement Class by submitting a written, signed statement ("Opt Out Statement") to the Claims Administrator indicating that he or she is opting out of the monetary portion of the settlement. To be effective, the Opt Out Statement must be received by the Claims Administrator no later than the Notice Response Deadline, and must contain the following:

-46-

(a)    Class member's name, address, and telephone number;

(b)    The name and number of this case (*Davis, et al. v. Merrill Lynch & Co.,*

*Inc., et al.* Case No. 15-cv-175);

(c)    A statement that the Class Member wishes to be excluded from the

settlement, including the following language, which must be included in the Opt

Out Statement:

> I hereby opt out of and exclude myself from the class action settlement in the lawsuit *Davis, et al. v. Merrill Lynch & Co., Inc., et al.* Case No. 15-cv-175 (W.D.N.C.) and associated judgment. I understand that by requesting to be excluded from the monetary settlement in this case, I will receive no money from the Settlement and will be precluded from participating in any settlement or receiving any benefit pursuant to the Settlement of or judgment in this action. I understand that I may bring a separate legal action seeking damages for my own otherwise valid claims, if any, against Defendants for any Released Claims (as defined in the Notice), subject to the statute of limitations and other applicable restrictions and defenses, but I might receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case. I further understand that if I elect to opt out and if I prosecute my claims on my own and I desire representation by an attorney, I will need to hire or otherwise retain an attorney for that purposes at my own expense. I also understand that I may not seek exclusion from the class with respect to injunctive relief and that I am bound by the injunctive relief provisions of the Settlement.

> With full understanding of the foregoing, I elect to opt out of the lawsuit and the associated Settlement and thereby disqualify myself from any payment under the Settlement. I hereby certify that it is my personal signature below and acknowledge that this form is not valid unless personally signed by me.

The Opt Out Statement must be signed personally by the individual Class Member seeking to

Opt Out of the Settlement Class, and must be mailed, emailed, or faxed to the Claims

Administrator at the following:

Case 3:15-cv-00175-RJC-DCK   Document 37-1   Filed 02/08/16   Page 49 of 72

*Claims Administrator*:

Davis v. Merrill Lynch & Co., Inc.
Claims Administrator
c/o Rust Consulting, Inc.
P.O. Box 2396
Faribault, MN 55021-9096
[email]
[fax]

If an Opt Out Statement is not received by the Claims Administrator on or before the Notice

Response Deadline, then that Monetary Relief Class Member will be deemed to have forever

waived his or her right to opt out of the Settlement Class. Monetary Relief Class Members who

do not properly submit Opt Out Statements shall be deemed Members of the Settlement Class.

Monetary Relief Class Members who properly and timely submit Opt Out Statements shall have

no further role in the Litigation, and for all purposes they shall be regarded as if they never were

a party to this Litigation, and thus they shall not be entitled to any benefit as a result of this

Litigation. Notwithstanding the foregoing, a Monetary Relief Class Member shall have the right

to revoke a properly and timely submitted Opt Out Statement if notice of the Class Member's

election to revoke his or her Opt Out Statement is received by the Claims Administrator on or

before the Notice Response Deadline. Injunctive Relief Class Members cannot opt out of the

Settlement.

7.4     Monetary Relief Class Members who do not Opt Out of the Settlement

Class and Injunctive Relief Class Members may object to the Agreement and this settlement by

filing a written objection with the Court with copies to the Claims Administrator, Class Counsel,

and Defendants' counsel by no later than the Notice Response Deadline at the following:

-48-

*Court*:

Clerk of the Court
United States District Court
Western District of North Carolina
401 West Trade Street, Room 210
Charlotte, North Carolina 28202

*Claims Administrator*:

Davis v. Merrill Lynch & Co., Inc.
Claims Administrator
c/o Rust Consulting, Inc.
P.O. Box 2396
Faribault, MN 55021-9096
[email]
[fax]

*Class Counsel for Class Representatives*:

SHUMAKER, LOOP & KENDRICK, LLP
Michael S. Taaffe
240 South Pineapple Avenue, 10th Floor
Sarasota, Florida 34236
mtaaffe@slk-law.com
Fax: (941) 366-3999

*Counsel for Defendants*:

MORGAN, LEWIS & BOCKIUS LLP
Sam S. Shaulson
101 Park Avenue
New York, New York 10178
sshaulson@morganlewis.com
Fax: (212) 309-6001

The objection must set forth, in clear and concise terms: (a) a statement of each objection

asserted; (b) a detailed description of the facts underlying each objection; (c) any documents in

the possession or control of the objector and relied upon by the objector as a basis for the

objection; (d) if the objector is represented by counsel, a detailed description of the legal

authorities supporting each objection; (e) if the objector plans to utilize expert opinion and/or

-49-

testimony as part of the objection(s), a written expert report from all proposed experts; (f) if the objector plans to call a witness or present other evidence at the hearing, the objector must state the identity of the witness and identify any documents by attaching them to the objection and provide any other evidence that the objector intends to present; (g) a statement of whether the objector intends to appear at the hearing; and (h) a copy of any exhibits which the objector may offer during the hearing. Attendance at the final hearing is not necessary. Any Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed settlement or any other provision of this Agreement. Unless otherwise ordered by the Court, Class Members shall not be permitted to speak at the final approval hearing unless they have submitted a timely written objection pursuant to this Paragraph. The Class Notice and Programmatic Relief Notice shall advise Class Members of this option.

7.5     If the Court enters the Preliminary Approval Order, and approves the Settlement Formula and the Class Notice and Programmatic Relief Notice, then at the resulting Final Approval Hearing, the Class Representatives and Defendants, through their counsel of record, shall address any written objections from Monetary Relief Class Members who did not opt out or from Injunctive Relief Class Members as well as any concerns of the Court, if any, and shall and hereby do, unless provided otherwise in this Agreement, stipulate to final approval of this Agreement and entry of the Judgment by the Court.

7.6     Subject to Paragraph 8.5, only Participating Claimants shall be entitled to payment pursuant to the Judgment.

-50-

7.7    Monetary Relief Class Members who submit both a Settlement Claim Certification Form and Release and an Opt Out Statement shall be sent a cure letter by the Claims Administrator seeking clarification of which response they want to submit, and counsel for the Settling Parties will be copied on said cure letter, provided that the Claims Administrator abides by the provisions of Paragraph 6.8 and that Class Counsel shall not receive the name or contact information of any Class Member. Absent any response to the cure letter, the form submitted later (either Settlement Claim Certification Form and Release *or* Opt Out Statement) will be deemed the operative response to the Class Notice.

7.8    Opt Out Statements must be received on or before the Notice Response Deadline by the Claims Administrator in order to be valid. This term regarding late Opt Out Statements was bargained for between the Settling Parties and is a material term of the Agreement. Any Monetary Relief Class Member who submits a late or invalid Settlement Claim Certification Form and Release that the parties mutually determine and agree to be a timely and/or valid claim will be a Participating Claimant. Any Monetary Relief Class Member's late Settlement Claim Certification Form and Release that the parties do not mutually determine and agree to be a valid and/or timely claim will not be a Participating Claimant. Nothing in this Paragraph explicitly or implicitly creates any obligation by any party to consider that a late Settlement Claim Certification Form and Release is timely and/or valid.

7.9    Subject to Defendants' review and approval, the Class Representatives and Class Counsel agree that they will request the Court to enter, after the hearing on final approval of this Agreement, an Order of Final Approval, substantially in the form of attached Exhibit 2. In accordance with Exhibit 2, the Order of Final Approval will certify the Class for settlement purposes only and find that this Agreement is fair, reasonable, and adequate and in the best

-51-

interest of the Class. The Order of Final Approval will require the Settling Parties to carry out the provisions of this Agreement. The Final Approval Order will dismiss all claims and motions of the Class Members pending against the Defendants in the Litigation on the merits with prejudice as to the Class; declare that the Monetary Relief Class Members who did not opt out are bound by the Releases set forth in Paragraph 10 of this Agreement; declare the Settling Parties, including Settlement Class Members, are bound by the Judgment; and reserve continuing jurisdiction over the enforcement of this Agreement and the administration and distribution of the settlement funds.

8.     Timing of Payments to Participating Claimants.

8.1     Within fourteen (14) days of and only after the Effective Date and subject to Paragraph 8.5 below, Defendants, through the Claims Administrator, shall pay to each Participating Claimant his or her respective Individual Net Settlement Sum, as defined in Paragraph 1.25. A Monetary Relief Class Member must properly and timely submit a Qualifying Settlement Claim Certification Form and Release in response to the Class Notice in order to be eligible to receive a payment under this Paragraph.

8.2     In accordance with the terms of Paragraphs 3.1 and 3.2 and subject to Paragraphs 4 and 8.5, Defendants, through the Claims Administrator, shall issue to each Participating Claimant one check (or more if necessary for administrative convenience) payable to the Participating Claimant, from Defendants (or from an account administered by the Claims Administrator but funded by Defendants), for the Individual Net Settlement Sum. Defendants, through the Claims Administrator, shall mail this check(s) to each Participating Claimant at his or her Last Known Address, or Updated Address, if obtained, within fourteen (14) days of the Effective Date. If the mailing pursuant to this Paragraph is returned as undeliverable, the Claims

-52-

Administrator will use the information in its possession to contact the Participating Claimant in order to effectuate the Participating Claimant's receipt of said mailing.

8.3     Checks issued to Participating Claimants pursuant to this Agreement shall remain negotiable for a period of ninety (90) days from the date of mailing, and the funds associated with any checks which are not properly or timely negotiated shall remain the property of Defendants and shall not be paid to any person other than Defendants. The Settling Parties hereby agree that such funds represent settlement payments for matters disputed in good faith, and they shall not be subject to escheat rules, *cy pres,* or other distribution not provided for in this Stipulation.

8.4     Following the mailing of all of the payments to Participating Claimants discussed in Paragraphs 8.1 and 8.5, the Claims Administrator shall provide counsel with a written confirmation of this mailing. Upon receipt of this confirmation, Class Counsel will file a notice or acknowledgement of satisfaction of Judgment with the Court in the Litigation on behalf of the Class.

8.5     Notwithstanding anything in this Agreement to the contrary, settlement payments shall be withheld for one year following the Settlement Payment Date from Participating Claimants who are under active regulatory inquiry at the Settlement Payment Date related to conduct while employed by Defendants and from Participating Claimants involuntarily terminated within one year of Final Approval for one year following the termination date. After the one-year period described above, a Participating Claimant shall receive his or her Individual Net Settlement Sum only if the Participating Claimant has not been barred or suspended for more than one year from the industry because of conduct while employed by Defendants (regardless of when that conduct was uncovered or when investigation into that conduct is initiated). If a

-53-

Participating Claimant whose settlement payments are withheld under this Paragraph provides evidence satisfactory to Defendants that a pending regulatory inquiry is concluded prior to the end of the one-year waiting period and that the inquiry did not result in either a permanent bar or suspension for more than one year because of conduct while employed by Defendants (regardless of when that conduct was uncovered or when investigation into that conduct is initiated), the Participating Claimant will receive his or her Individual Net Settlement Sum. Individuals who are barred or suspended for more than one year from the industry because of conduct while employed by Defendants (regardless of when that conduct was uncovered or when investigation into that conduct is initiated) will not receive his or her Individual Net Settlement Sum and will not be bound by the Release or Judgment. At the end of the one-year waiting period, Defendants shall provide the Claims Administrator with the names of Participating Claimants who have been barred or suspended for one year or more and who will not receive his or her Individual Net Settlement Sum, along with supporting records verifying the bar or suspension. The Claims Administrator will inform counsel for the Settling Parties whether there is a dispute as to whether a Participating Claimant will not receive his or her Individual Settlement Sum as a result of the provisions in this Paragraph. The one-year waiting period provided for in this Paragraph shall not impact the date of Final Approval or payment of Class Counsel's fees. Participating Claimants whose settlement payments are withheld under this Paragraph shall not decrease the amount of fees that may be awarded pursuant to Paragraph 12.1.

        8.6     Participating Claimants whose settlement payments are withheld under Paragraph 8.5 will be sent notice by the Claims Administrator consistent with Paragraph 8.5 and agreed upon by the Settling Parties. Participating Claimants whose settlement payments are withheld under Paragraph 8.5 because of a pending regulatory inquiry will be sent instructions

on how to inform the Claims Administrator if the pending regulatory is concluded prior to the end of the one-year waiting period. Prior to such notice being sent to a Participating Claimant, the Claims Administrator will promptly notify Class Counsel of any Participating Claimant who is subject to Paragraph 8.5, provided that the Claims Administrator abides by the provisions of Paragraph 6.8 and that Class Counsel shall not receive the name or contact information of any Class Member.

     9.     Effectiveness of Agreement.

     9.1     The Effective Date of this Agreement shall be the date when each and all of the following conditions have occurred:

     9.1.1     This Agreement has been signed by the Class Representatives and Defendants;

     9.1.2     A Preliminary Approval Order has been entered by the Court, in substantially the form of attached Exhibit 1, granting preliminary approval of this Agreement, and approving a form of Class Notice and Programmatic Relief Notice, as provided in Paragraph 6;

     9.1.3     The Court-approved Class Notice and Programmatic Relief Notice has been duly mailed to the Class Members as ordered by the Court in the Litigation;

     9.1.4     An Order of Final Approval has been entered by the Court, in substantially the form of attached Exhibit 2, as provided in Paragraph 7.9;

     9.1.5     The Order of Final Approval Order entered as provided in Paragraph 9.1.4 has become Final because of: (i) the expiration of the time for appeals therefrom without any appeal having been taken or, (ii) if review of the order, or any portion thereof, is sought by any person, the matter has been fully and finally resolved by the appellate court(s) and the time for seeking any requests for rehearing en banc and higher level of appellate review has expired.

-55-

9.1.6    If any material portion of the Agreement or the Order of Final Approval Order is vacated, modified, or otherwise altered on appeal, Defendants may, in their sole discretion, within fourteen (14) calendar days of such appellate ruling, declare that the Agreement has failed to become effective, and in such circumstances the Agreement shall cease to be of any force and effect as provided in Paragraph 14.

10.    Releases.

10.1    On the Effective Date, each of the Releasors, including but not limited to the Class Representatives, by operation of this Release and the Judgment set forth in the Order of Final Approval, do hereby and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged any and all of the Releasees of and from any and all Released Claims and, without further action by any person or the Court, will be deemed: (a) to have consented to dismiss with prejudice the Litigation as against the Defendants and any and all Released Claims; (b) to have released and forever discharged any and all Released Claims; and (c) to be forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including but not limited to any state, federal, or foreign court, or regulatory agency, or any arbitration forum, including but not limited to FINRA, AAA, and JAMS, each and every Released Claim.

10.2    The Releasors acknowledge and agree that they are aware that they may hereafter discover material or immaterial facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Release, but that it is their intention to, and they do hereby, upon the Effective Date of this Agreement, fully, finally and forever settle and release each and every one of the Releasees from each and every Released Claim, including known Released Claims and Unknown Claims.

-56-

10.3     Subject to Court approval and upon the Effective Date, each Releasor shall be bound by this Agreement and the Judgment and all of their claims shall be dismissed with prejudice and released even if they never received actual, prior notice of the Litigation or its settlement in the form of the Class Notice or otherwise. The Release and agreements contained in this Paragraph 10 shall apply to and bind all Releasors, including those Releasors whose Class Notices are returned as undeliverable, and those for whom no current address can be found, if any. Subject to Court approval and upon the Effective Date, Injunctive Relief Class Members shall be bound by the Judgment and the Programmatic Relief set forth therein.

10.4     The Settlement Claim Certification Form and Release to be executed by Monetary Relief Class Members shall release all Released Claims against the Releasees and shall be substantially in the form contained in Exhibit 1-A hereto.

11.     Stay of Discovery and Other Proceedings.

11.1     Upon execution of this Agreement, the Class Representatives and Class Counsel shall discontinue all discovery activity or related proceedings in the Litigation, with the exception of the confirmatory data and verification referred to in Paragraph 3.1.3, provided that if this Agreement is terminated pursuant to Paragraph 14, the Class Representatives and Class Counsel may pursue discovery or related proceedings against the Defendants.

11.2     Upon the filing of the motion for preliminary approval, the Settling Parties agree to suspend and stay all proceedings in the Litigation, other than proceedings as may be necessary to carry out the terms and conditions of the Agreement. The Preliminary Approval Order shall also, upon expiration of the Notice Response Deadline, bar and enjoin all Monetary Relief Class Members who have not filed a timely Opt Out Statement, pursuant to Paragraph 7.3, from maintaining, commencing, prosecuting, or pursuing either directly, representatively, or in any other capacity, any Released Claim subsumed and covered by the Release in this Agreement

-57-

in any court or arbitration forum, including by not limited to FINRA, AAA, or JAMS. If, and only to the extent that, this Agreement terminates pursuant to Paragraph 14 of this Agreement, the Settling Parties shall not be deemed to have waived any rights as a result of such suspension or stay of proceedings.

   11.3 Class Counsel and counsel for Defendants agree to work together in good faith to identify any cases which involve claims covered by the Settlement and to determine a procedure for staying those cases in order to effectuate the terms of the Agreement.

  12. <u>Payment of Attorneys' Fees and Litigation Costs and Enhancements to the Class Representatives.</u>

   12.1 Class Counsel shall be entitled, subject to Court approval, to apply to the Court for an award of attorneys' fees not to exceed twenty-five percent (25%) of the Total Gross Settlement Sum[4], less fees attributable to any Opt Outs (but excluding Opt Outs pursuant to Paragraphs 4.7 and individuals whose settlement payments are withheld pursuant to Paragraph 8.5 above). Monetary Relief Class Members' claim filing status shall not affect the amount that Class Counsel may seek in fees.

   12.2 Class Counsel shall be entitled, subject to Court approval, to apply to the Court for an award of costs not to exceed $175,000.00.

   12.3 Payments made per this Section 12 shall constitute full satisfaction of any claim for fees or costs in this Litigation, and the Class Representatives and Class Counsel, on behalf of themselves and all Settlement Class Members, agree that they shall not seek nor be entitled to any additional attorneys' fees or costs under any theory in this Litigation.

---

[4] Fees on the Individual Gross Settlement Sums of individuals covered by the Settlement Formula in Paragraph 3.1.1(c) will be calculated before the credit for consideration received in exchange for the previous release is deducted.

Case 3:15-cv-00175-RJC-DCK Document 37-1 Filed 02/08/16 Page 60 of 72

12.4    The Class Representatives and Class Counsel agree that they shall be responsible for submitting to the Court, the amount of these attorneys' fees and costs. Class Counsel agrees to submit the necessary materials to support these payments along with the motion for final approval of the Agreement. Defendants agree not to oppose any submission regarding, or request for approval of, payment of attorneys' fees or costs provided it is consistent with this Agreement.

12.5    In the event that the Court (or appellate court) awards less than the requested amount for attorneys' fees and/or costs, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Paragraph. Any amounts not awarded shall remain the property of Defendants and shall not be paid to any person other than Defendants.

12.6    Fourteen (14) days after the Effective Date, pursuant to this Paragraph, Defendants shall pay the law firm of Shumaker, Loop & Kendrick, LLP the attorneys' fees and costs that have been approved by the Court provided that the Class Representatives, on behalf of all Class Members, have executed this Agreement and by doing so acknowledge that the payment and method of payment under this Agreement is in full satisfaction of any and all claims, rights, and/or demands Class Counsel, Class Representatives, and/or the Settlement Class had, have or may claim to have in the future for attorneys' fees, costs, expenses, debts, or any other payment in connection with the Litigation and/or this Agreement. This payment will be reported on a Form 1099 for Shumaker, Loop & Kendrick, LLP. Shumaker agrees to provide Defendants with its tax identification number. Other than any reporting of this fee and costs payment as required by this Agreement or law, which Defendants shall make within fourteen (14) days of the Effective Date, and only in the event that the Effective Date occurs, Class

-59-

Counsel and the Class Representatives shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made pursuant to this Paragraph. No party shall be deemed the prevailing party for any other purposes of the Litigation.

12.7    Class Counsel shall be entitled, subject to Court approval, to apply to the Court for an award of an enhancement payment to each of the two (2) Class Representatives of an amount not to exceed $20,000.00 each ($40,000.00 in the aggregate). Class Counsel may make this application with any supporting material, along with the motion for final approval. Defendants will not oppose Class Counsel's request for these enhancement payments provided it is consistent with this Agreement.

12.8    Provided that the conditions set forth in this Agreement are satisfied, not more than fourteen (14) days after the Effective Date, and only in the event that the Effective Date occurs, Defendants will forward a check made payable to each of the Settling Named Plaintiffs in each's personal capacity only and via each's counsel of record, in the gross amount of $20,000.00 (or other such lower amounts the court approves) in addition to each's Individual Net Settlement Sum as a Participating Claimant. Such payments shall be compensation and consideration for their efforts as the Class Representatives in the Litigation.

12.9    Through this Agreement, the Settling Named Plaintiffs agree to be Members of the Settlement Class and Participating Claimants subject to the Judgment and Release. The Class Representatives will be sent a Class Notice, but will be bound by the Agreement, Judgment, and Release regardless of whether they complete a Settlement Claim Certification Form and Release. The enhancement payments paid to the Settling Named Plaintiffs shall be subject to required withholdings and deductions and shall be reported in the

-60-

year of payment as wage income to the Settling Named Plaintiffs on a Form W-2 or analogous form. Other than the reporting and withholding set forth in this Agreement, each Settling Named Plaintiff shall be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made pursuant to this Paragraph.

12.10  Unless otherwise expressly provided, Defendants shall have no liability whatsoever with respect to the allocation among the Class Representatives, Class Counsel, and/or any other person who may assert some claim thereto, of any award or payment issued or made in the Litigation or pursuant to this Agreement, including, but not limited to, any award or payment pursuant to Paragraph 12.

13.  Claims Administrator.

13.1  Defendants shall be solely responsible for the fees and expenses reasonably incurred by the Claims Administrator as a result of procedures and processes expressly required by this Agreement. Regardless of whether the Effective Date occurs, neither the Class Representative nor Class Counsel shall have any responsibility or obligation for the payment of costs incurred by the Class Administrator, including the cost of mailing the Class Notice and Programmatic Relief Notice.

13.2  The Claims Administrator shall report directly to Class Counsel and counsel for Defendants regarding the claims administration process. The Claims Administrator must report claim status information (e.g., number of claims made, opt outs, Class Member disputes) to counsel of record in this matter upon request and disclose claims eligibility and status information (e.g., whether a claim form or opt out statement has been received or the status of a Class Member's dispute) upon request of Class Counsel on behalf of a Class Member, provided that that Claims Administrator abides by the provisions of Paragraph 6.8 above. To the extent that Class Counsel requires additional information beyond the claim status information

-61-

provided by the Claims Administrator pursuant to the preceding sentence, in order to respond to a Class Member's inquiry to Class Counsel, Class Counsel may make a written request for additional information to counsel for Defendants. Defendants will respond to such request within two (2) business days.

13.3    The actions of the Claims Administrator shall be governed by the terms of this Agreement. The Settling Parties may provide relevant information needed by the Claims Administrator per this Agreement and engage in related communications with the Claims Administrator with notice or copies to counsel for the Settling Parties, with the exception of communications from Defendants to the Claims Administrator containing names and identifying information for Class Members which may be made to the Claims Administrator without notice or copies to Class Counsel.

13.4    In the event that either Settling Party believes that the Claims Administrator has not acted in accordance with the Agreement, that party's counsel shall meet and confer with counsel for the other Settling Party prior to raising any such issue with the Court.

14.    Termination of Settlement.

14.1    *Material Change.* In the event that (i) the settlement set forth in this Agreement is not approved by the Court without material changes in Defendant's good faith determination or (ii) the Effective Date does not occur, no payments other than those pursuant to Paragraph 13.1 shall be made by Defendants to anyone in accordance with the terms of this Agreement, the Settling Parties will bear their own costs and fees with regard to the efforts to obtain Court approval, this Agreement shall be deemed null and void with no effect on the Litigation whatsoever, and the Settling Parties' rights and obligations with respect to the use of this Agreement and the settlement contemplated hereby will be subject to Sections II and III, and Section V Paragraph 2.2, and the provision included in the Preliminary Approval Order

-62-

substantially similar to Paragraph 22 of the Proposed Preliminary Approval Order attached as Exhibit 1 or any provision included in the Final Approval Order substantially similar to Paragraph 15 of the Proposed Final Approval Order attached as Exhibit 2 shall survive. Defendants may use, offer, admit, or refer to the Stipulation and to the settlement reached therein where necessary to defend themselves in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding. Notwithstanding any other provisions of this Agreement, no order of the Court or an appellate court reducing or modifying the amount of any attorneys' fees or litigation costs to be paid by Defendants to Class Counsel or the amount of the enhancement payments to the Class Representatives shall constitute grounds for cancellation or termination of the Agreement or grounds for limiting any other provision of the Judgment.

14.2 *Effect of Opt Outs.* In the event that more than 10% of Monetary Relief Class Members submit Opt Out Statements pursuant to Paragraph 7.3 (excluding Opt Outs pursuant to Paragraph 4.7) or if the combined Individual Gross Settlement Sums for Monetary Relief Class Members who opt out is more than 30% of the Total Gross Settlement Sum, Defendants shall have the absolute discretionary right to terminate this settlement and Agreement no later than fourteen (14) days following the Notice Response Deadline and in such case, each and every one of Defendants' obligations under this Agreement shall cease to be of any force and effect, other than payments made pursuant to Paragraph 13.1 above, and this Agreement and any orders entered into in connection therewith shall be vacated, rescinded, cancelled, and annulled, but the Settling Parties' rights and obligations with respect to the use of this Agreement and the settlement contemplated hereby will be subject to Sections II and III, and Section V, Paragraph 2.2, and the provision included in the Proposed Preliminary Approval Order substantially similar to Paragraph 22 of the Preliminary Approval Order attached as Exhibit 1 or any provision

-63-

included in the Final Approval Order substantially similar to Paragraph 15 of the Proposed Final

Approval Order attached as Exhibit 2 shall survive. If Defendants exercise this option, the

Settling Parties shall return to the status quo in the Litigation as if the Settling Parties had not

entered into this Agreement and the Defendants will not oppose one further amendment of the

existing complaint on the grounds that Plaintiffs have previously amended the Complaint.

15. Confidentiality.

15.1    The terms of this Agreement shall be kept confidential prior to filing of

the Agreement with the Court. After filing of this Agreement with the Court and prior to the

entry of the Order of Final Approval, the Settling Parties agree not to issue press releases or

comment to the press or other media regarding the Settlement, and the Settling Parties and their

counsel shall not respond to any media inquiries unless the statement is mutually agreed upon by

Class Counsel and counsel for Defendants.

15.2    All documents and information produced or exchanged in connection with

this Litigation, including during mediation and settlement negotiations, by the Settling Parties

should be treated as confidential. Following entry of the Order of Final Approval, all documents

produced or exchanged by the Settling Parties in connection with this Litigation, including

during mediation and settlement negotiations, shall be returned or destroyed.

16. Cooperation.

16.1    The Settling Parties and their counsel agree that they will cooperate to

effectuate and implement all terms and conditions of this Agreement and exercise good faith

efforts to accomplish the terms and conditions of this Agreement.

17. Miscellaneous Provisions.

17.1    The only Monetary Relief Class Members entitled to any payment under

this Agreement and the associated Judgment are Participating Claimants, and they shall be

-64-

entitled to their respective Individual Net Settlement Sums only. The total amount that Defendants will pay pursuant to this settlement is the Total Gross Settlement Sum as defined in Paragraph 1.58, plus Class Representative enhancement payments approved by the Court pursuant to Paragraph 12.7, plus the fees and expenses for the Claims Administrator as set forth in Paragraph 13.1, plus costs for mediation of Class Member disputes pursuant to Paragraphs 3.1.3 and 4.5 and Section 3.3. This Agreement and the associated Judgment do not and will not create any unpaid residue or unpaid residual, and no distribution of such shall be required. The provisions of California Code of Civil Procedure section 384 and/or any similar statute in any other state do not apply to this action or this Agreement.

17.2    No person shall have any claim against Class Counsel, the Claims Administrator, counsel for Defendants, or any of the Releasees based on the payments made or other actions taken substantially in accordance with the Agreement and the settlement contained therein or further orders of the Court.

17.3    The Settling Parties agree that the amounts paid in Settlement and the other terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

17.4    All of the exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

17.5    The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

17.6    The Agreement constitutes the entire agreement among the Settling Parties hereto and no representations, warranties, or inducements have been made to any party

-65-

concerning the Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs and attorney fees.

17.7     Class Counsel, on behalf of the Class, are expressly authorized by the Class Representatives to take all appropriate action required or permitted to be taken by the Class pursuant to the Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Agreement on behalf of the Class which they deem appropriate.

17.8     Each person executing the Agreement or any of its exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do so.

17.9     All agreements made during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

17.10   The Agreement may be executed in one or more counterparts, including by signature transmitted by facsimile or by email in PDF format. All executed counterparts and each of them shall be deemed to be one and the same instrument.

17.11   The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, successors, and assigns of the parties hereto; but this Agreement is not designed to and does not create any third party beneficiaries.

17.12   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement.

17.13   Any disputes with regard to this Agreement shall be governed by New York law without regard to conflicts of law principles.

17.14 The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party. Each party and their counsel cooperated in the drafting and preparation of the Agreement and no party shall be deemed the drafter of this Agreement.

Dated: February 8, 2016

CLASS REPRESENTATIVE
BENJAMIN E. DAVIS

By: _____
BENJAMIN E. DAVIS

Dated: February ___, 2016

CLASS REPRESENTATIVE
ROBERTO F. GARCIA

By: _____
ROBERTO F. GARCIA

Dated: February ___, 2016

MERRILL LYNCH & CO., INC.

By: _____

Name: _____

Title: _____

Dated: February ___, 2016

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INCORPORATED

By: _____

Name: _____

Title: _____

Dated: February ____, 2016

CLASS REPRESENTATIVE
BENJAMIN E. DAVIS

By:_____
      BENJAMIN E. DAVIS

Dated: February 2 , 2016

CLASS REPRESENTATIVE
ROBERTO F. GARCIA

By:_____
      ROBERTO F. GARCIA

Dated: February ____, 2016

MERRILL LYNCH & CO., INC.

By:_____

Name:_____

Title:_____

Dated: February ___, 2016

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INCORPORATED

By:_____

Name:_____

Title:_____

Dated: February ____, 2016

CLASS REPRESENTATIVE
BENJAMIN E. DAVIS

By:

BENJAMIN E. DAVIS

Dated: February ____, 2016

CLASS REPRESENTATIVE
ROBERTO F. GARCIA

By:

ROBERTO F. GARCIA

Dated: February 6, 2016

MERRILL LYNCH & CO., INC.

By:

Name: _Bert H. Ware_

Title: _Senior Vice President +
Assistant General Counsel_

Dated: February 6, 2016

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INCORPORATED

By:

Name: _Bert H. Ware_

Title: _Senior Vice President +
Assistant General Counsel_