# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division
### Civil Action No. 15-cv-175

BENJAMIN E. DAVIS and
ROBERTO F. GARCIA,

        Plaintiffs,

    v.

MERRILL LYNCH & CO., INC. and
MERRILL LYNCH PIERCE, FENNER
& SMITH, INC.,

        Defendants.

---

## BRIEF IN SUPPORT OF
## UNOPPOSED MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT

Michael S. Taaffe (Admitted *Pro Hac Vice*)
Michael D. Bressan (Admitted *Pro Hac Vice*)
Jarrod J. Malone (Admitted *Pro Hac Vice*)
David L. Wyant, Jr. (Admitted *Pro Hac Vice*)
Shumaker, Loop & Kendrick, LLP
240 South Pineapple Ave. – 10th Floor
Sarasota, Florida 34236
Telephone:  (941) 366-6660
Facsimile:  (941) 366-3999
E-Mail:  mtaaffe@slk-law.com
*Attorneys for Plaintiffs*

Steven A. Meckler
N.C. State Bar No. 26544
Shumaker, Loop & Kendrick, LLP
128 South Tryon Street, Suite 1800
Charlotte, North Carolina 28202
Telephone:  (704) 375-0057
Facsimile:  (704) 332-1197
E-Mail:  smeckler@slk-law.com

# Contents

I.   INTRODUCTION ................................................................................................1

II.  SUMMARY OF CLAIMS AT ISSUE .................................................................5

   A.   Factual Background ....................................................................................5

   B.   Plaintiffs' Claims and Merrill Lynch's Potential Defenses ...........................8

      1.   Merrill Lynch Defenses that Apply to Several or All of Plaintiffs' Claims ...............8

      2.   Other Merrill Lynch Defenses Apply to Specific Claims ....................9

III. THE TERMS OF THE SETTLEMENT ............................................................13

IV.  THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL ..............18

V.   FAIRNESS OF THE SETTLEMENT ..............................................................20

   A.   Posture of the Case at Settlement ............................................................20

   B.   Extent of Discovery Conducted ...............................................................21

   C.   Circumstances Surrounding the Negotiations...........................................21

   D.   Counsel's Class Action Experience .........................................................22

VI.  ADEQUACY OF THE SETTLEMENT ...........................................................22

VII. CONCLUSION ..............................................................................................23

## Cases

*Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015), *citing In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 159 (4th Cir. 1991). .............................................20

*Ehrenhaus v. Baker*, 216 N.C. App. 59, 73, 717 S.E.2d 9, 19 (N.C. Ct. App. 2011). .............19

*Ehrenhaus v. Baker*, 776 S.E.2d 699, 708 (N.C. Ct. App. 2015). .......................................18

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 828 (E.D.N.C. 1994), *quoting In Re Jiffy Lube Securities Litigation,* 927 F.2d 155, 158 (4th Cir.1991)...............18

*In re Jiffy Lube,* 927 F.2d at 159.............................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). ......................19

## Statutes

Fed. R. Civ. P. 23(e). ............................................................................................18

Fed. R. Evid. 408 Advisory Committee Note. ...........................................................18

## Other Authorities

*The Manual for Complex Litigation, Fourth* ...............................................................19

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**
**Civil Action No. 15-cv-175**

| | |
|---|---|
| _____**x**<br>　　　　　　　　　　　　　　　　**:**<br>**BENJAMIN E. DAVIS and** 　　**:**<br>**ROBERTO F. GARCIA,** 　　　**:**<br>　　　　　　　　　　　　　　　　**:**<br>　　　　　**Plaintiffs,** 　　　　**:**<br>　　　　　　　　　　　　　　　　**:**<br>**vs.** 　　　　　　　　　　　　**:**<br>　　　　　　　　　　　　　　　　**:**<br>　　　　　　　　　　　　　　　　**:**<br>**MERRILL LYNCH & CO., INC., and** **:**<br>**MERRILL LYNCH, PIERCE, FENNER** **:**<br>**& SMITH, INC.,** 　　　　　　**:**<br>　　　　　　　　　　　　　　　　**:**<br>　　　　　**Defendants.** 　　　**:**<br>　　　　　　　　　　　　　　　　**:**<br>_____**x** | **BRIEF IN SUPPORT OF UNOPPOSED**<br>**MOTION FOR FINAL**<br>**APPROVAL OF CLASS ACTION**<br>**SETTLEMENT** |

COME NOW Plaintiffs Benjamin E. Davis and Roberto F. Garcia on behalf of themselves and the Class of others similarly situated (collectively "Plaintiffs"), and pursuant to Fed. R. Civ. Pro. 23(e), hereby file this Brief in Support of Unopposed Motion for Final Approval of Class Action Settlement and state as follows:

## I.      INTRODUCTION

This is a brief in support of the Plaintiffs' Motion for Final Approval of Class Action Settlement of claims against Merrill Lynch, Pierce, Fenner & Smith, Inc. and Merrill Lynch & Co., Inc. ("Merrill Lynch") by Merrill Lynch employees who participated in various long-term contingent incentive compensation programs and/or the Advisor Transition Program while employed by Merrill Lynch and who had their plan balances and/or ATP Bonus Payments

forfeited following their termination of employment, or who are at risk of their compensation being forfeited by Merrill Lynch if they are terminated.

The class consists of current and former Merrill Lynch employees who allege that during their employment, they earned awards under one or more of four long-term contingent incentive compensation plans: the Financial Advisor Capital Accumulation Award Plan ("FACAAP")[1], the Growth Award Plan, the WealthBuilder Account Plan, and the Long-Term Incentive Compensation Plan for Managers and Producers ("LTICP") (collectively, the "Plans").[2] In addition to the Plans, certain Class Members received monthly Bonus Payments pursuant to the Advisor Transition Program ("ATP"), which was the retention program Merrill Lynch provided to selected employees after its merger with Bank of America.

The Plans and ATP contain provisions in their governing documents which outline the procedure and actions that must be taken by Merrill Lynch in order to deny participants benefits on the basis that participants were terminated for "Cause." Plaintiffs allege that Merrill Lynch failed to follow the contractual requirements of the Plans and ATP following involuntary termination and that therefore, the terminations were not for "Cause," and the terminated Class Members are thus entitled to their Plan balances and ATP Bonus Payments. Merrill Lynch denies Plaintiffs' allegations and further denies that Plaintiffs' interpretation of the Plans and ATP are correct and that Plaintiffs are entitled to any amounts under the Plans and/or ATP.

Plaintiff Benjamin E. Davis ("Davis") began work for Merrill Lynch as a financial advisor in January 1983 in Charlotte, North Carolina. Davis was terminated by Merrill Lynch in April 2013. Plaintiffs allege that Merrill Lynch breached the requirements of the Plans and ATP

---

[1] FACAAP awards under this settlement include awards granted in 2009 for performance year 2008 which were awarded under the 2009 Key Associate Stock Plan, but which Plaintiffs allege should have been awarded under FACAAP.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

to find a termination for "Cause" in order to forfeit Davis' Plans awards and ATP Bonus Payments upon his termination.[3]

Plaintiff Roberto F. Garcia ("Garcia") began work for Merrill Lynch as a financial advisor in October 1988 in Miami, Florida. Garcia was terminated by Merrill Lynch in October 2012. Like Davis, Garcia also alleges that Merrill Lynch did not follow the Plans and ATP requirements to properly find that Garcia's termination was for "Cause" in order to forfeit Garcia's Plans awards and ATP Bonus Payments upon Garcia's termination.

Class Counsel have thoroughly investigated and analyzed the facts and circumstances relevant to the claims brought by the Plaintiffs in this case. Since early 2009, Class Counsel have filed more than 100 arbitration actions on behalf of former Merrill Lynch employees related to the Change in Control vesting provisions and the "Cause" termination provisions of the Plans, as well as the "Cause" termination provisions of the ATP. To date, Class Counsel has reviewed in excess of 700,000 individual documents comprising in excess of 6.2 million pages of information produced by Merrill Lynch, taken sworn testimony of the Plans administrators and other primary Merrill Lynch/Bank of America witnesses on several occasions, consulted with expert witnesses, arbitrated related cases to conclusion, and resolved numerous Change in Control vesting claims under the Plans and ATP.

In addition to the above-referenced discovery exchanged and analyzed by the parties in prior investigations and legal actions, since the filing of the Complaint in this action, Defendants produced documents and/or information necessary to analyze, value and categorize the status of actual and potential class members, and continued to produce and update the same information for individuals terminated through the date of preliminary approval by the Court, March 22, 2016

---

[3] These alleged requirements are outlined in more detail in Paragraphs 18 and 30 of the Second Amended Complaint.

(the "Preliminary Approval Date"). Information provided by Defendants includes spreadsheets reflecting date of termination, payroll data, Plans data, loan forgiveness and other data relevant to this case. Class Counsel has analyzed all of the data provided by Defendants in this case, which has been verified by Defendants as accurate and correct to the best of Defendants' knowledge and ability.

Class Counsel engaged in approximately six years of analyzing, prosecuting and resolving the same and similar claims against Merrill Lynch, and mediator James D. Yellen, Esq. ("Mediator Yellen") was involved in mediating several such disputes. The settlement in this case is the product of four days of mediation sessions in New York, New York conducted by Mediator Yellen, who has considerable experience in the financial services industry. Counsel for the parties are experienced class action lawyers who retained Mediator Yellen for his expertise in mediating complex legal matters in the financial services industry as well as similar issues between Class Counsel's clients and Merrill Lynch in the past.

The named Plaintiffs participated in the mediation and settlement process and they were actively involved in the negotiations that resulted in settlement. The parties were unable to reach settlement during the four-day mediation, but continued the settlement negotiations through telephone and written correspondence overseen by Mediator Yellen thereafter. Over the course of the next three months, the parties engaged in intensive negotiations regarding the terms of the settlement until they reached a settlement on September 24, 2015, which was thereafter memorialized in the Stipulation of Settlement ("Stipulation," **Exhibit A**). All of the negotiations between the parties have been adversarial, vigorous, non-collusive, and at arm's length under the supervision of Mediator Yellen.

The Stipulation provides that Monetary Relief Class Members are eligible to receive a

percentage of their unvested account balances in the Plans and a percentage of remaining Unpaid ATP Bonus Payments at the time of termination, if any, prior to a deduction for attorney's fees and costs. In addition, Defendants have agreed not to oppose the named Plaintiffs' request for enhancement payments of up to $20,000 each.[3] Defendants will also pay for claims administration procedures and all reasonable costs associated with the Claims Administrator separate and apart from the recovery of the Class.

Under Fed. R. Civ. Pro. 23(e), the claims of putative class members may be settled only with court approval. The Court preliminarily approved the settlement on March 22, 2016. On April 21, 2016, the Claims Administrator sent the Class Notice and Programmatic Relief Notice to Class Members. Not a single member of the class has objected to the settlement, and only two of the 273 Monetary Relief Class Members have opted out. Taaffe Decl. at ¶9.

The settlement meets the standards for final approval. As discussed below, the settlement is entitled to a presumption of fairness, since it was reached through arm's-length, non-collusive negotiations between experienced counsel, facilitated by a well-respected mediator. Furthermore, the settlement is reasonable because it provides meaningful compensation and programmatic relief to Class Members who forfeited their Plans and ATP awards. Accordingly, the Plaintiffs respectfully request that the Court approve the settlement in its entirety.

## II.    SUMMARY OF CLAIMS AT ISSUE

### A.    Factual Background

Merrill Lynch is a full-service financial services company, one of the largest in the United States, which employs approximately 15,000 financial advisors ("FAs") throughout the

---

[3] While Defendants do not oppose this Motion for Final Approval of Class Action Settlement, Defendants expressly reserve any and all rights with respect to any past or future breach of the Stipulation of Settlement by the Class Representatives.

country. Merrill Lynch employees' compensation packages include participation in certain long-term contingent incentive compensation Plans. Collectively, the Plans provide a part of the employees' compensation package and function to give employees incentive to remain with Merrill Lynch. The Plans have provisions that govern involuntary terminations following a Change in Control of the company.

In addition to the Plans and other compensation Merrill Lynch gives its employees, it also granted certain FAs retention agreements (the ATP) after the announcement of its merger with Bank of America which conferred additional payments upon these selected FAs. As with the Plans, the ATP includes provisions regarding involuntary termination.

## The Plans

The Plans include provisions specifically defining termination for "Cause" after a Change in Control and the procedures that Merrill Lynch must follow in order to forfeit Plans holdings in the event of such a termination. Plaintiffs allege that certain of the Plans provide that in order for a determination of "Cause," the Board of Directors of Merrill Lynch must provide the employee with notice of a Board meeting specifically called to evaluate the employee's termination, at which the employee has an opportunity to be heard with counsel present. Thereafter, the Board must adopt a resolution by at least three-quarters of the Board determining that the termination was for "Cause."

Plaintiffs allege that Merrill Lynch has not followed the provisions of the Plans upon termination of Plans participants. Plaintiffs allege that Merrill Lynch instead improperly made the decision that Plaintiffs and other similarly situated former Merrill Lynch employees (the "Class," defined more specifically below) were terminated for "Cause" and are thus not entitled to payment of their Plans holdings. Plaintiffs also allege that the Plans state that in the event a

participant is terminated without "Cause" following a Change in Control, said participant is entitled to their Plans holdings. Plaintiffs contend that Merrill Lynch forfeited the Class's Plans holdings in contravention of the Plans – thus forming the primary basis of this legal action.

## The ATP

In September 2008, Merrill Lynch announced that it would merge with Bank of America. With the goal of retaining key revenue-producing FAs, Merrill Lynch created the ATP, which was a contractual offer by Merrill Lynch of monies in the form of monthly Bonus Payments to these key employees in exchange for a commitment from the employee of continued employment for a number of years. In connection with the ATP, employees also received a loan and executed a promissory note.

Plaintiffs allege that the ATP "Cause" provisions provide that a terminated FA be given notice, an opportunity to respond, and a fifteen-day period to cure the terminable conduct to the extent curable. Plaintiffs allege that if the "Cause" provisions are not followed, the termination is without "Cause," triggering a cash lump sum payment of the remaining ATP Bonus Payments. Plaintiffs also allege that as with the Plans, Merrill Lynch has not followed the provisions of the ATP upon termination of its employees and has subsequently failed to pay the Class monies due and owing.

## The Lawsuit

On April 20, 2015, Plaintiffs Benjamin Davis and Roberto Garcia filed the instant lawsuit in this District on behalf of themselves and all similarly situated individuals who were terminated by Merrill Lynch without "Cause" and who were not paid their Plans holdings and/or not paid their ATP Bonus Payments pursuant to the Plans and/or ATP. On February 8, 2016, Plaintiffs filed a Second Amended Complaint. Plaintiffs, on behalf of a purported Class, sought monetary

damages in the amounts owed under the Plans and ATP, interest, attorney's fees, punitive damages, treble damages pursuant to RICO, wages penalties pursuant to New York Labor Code and injunctive relief with regard to future Plans administration.

**B.**     **Plaintiffs' Claims and Merrill Lynch's Potential Defenses**

Plaintiffs allege that Merrill Lynch did not follow its contractual obligations with respect to payment of Plaintiffs' Plans holdings and ATP Bonus Payments following their termination of employment. Plaintiffs make the following claims for relief: (1) breach of contract; (2) conversion, (3) unpaid wages; (4) unjust enrichment; (5) injunctive relief; (6) fraudulent misrepresentation/concealment; and (7) RICO. Plaintiffs believe they would prevail on all counts at trial and that Merrill Lynch faces considerable exposure, however Merrill Lynch has asserted several defenses that could limit Class Members' recovery. Those defenses include:

**1.**     **Merrill Lynch Defenses that Apply to Several or All of Plaintiffs' Claims**

**a.**     No Class Action

Merrill Lynch's defenses apply broadly to several or all of Plaintiffs' claims. Merrill Lynch alleges that none of Plaintiffs' claims can be brought as class claims because Plaintiffs are bound by provisions requiring individual arbitration of claims and disputes related to the Plans as well as provisions explicitly prohibiting class action claims related to the Plans.  In addition, Merrill Lynch alleges that the class claims involve a number of individual issues, including, but not limited to: the reasons why an individual was terminated, whether an individual participated in the review process established by Merrill Lynch following his or her involuntary termination, whether an individual received pre-termination notice, whether an individual previously litigated some or all of the claims related to his or her termination, and what law applies to adjudication of the common law in the state where claims are alleged. Absent settlement, Merrill Lynch alleges that there is substantial risk that Plaintiffs could not maintain a class.

> b.   Mitigation/Lack of Damages

Merrill Lynch alleges that many of the Class Members received forgivable loans or other remuneration from their new employers to compensate them for the forfeiture of Plans awards and ATP Bonus Payments after their Merrill Lynch terminations. Merrill Lynch alleges that those Plaintiffs either suffered no damages as a result of Merrill Lynch's conduct or that their damages were mitigated. Plaintiffs allege that any such forgivable loans were not a substitution for the forfeiture of the amounts sought in this action, but were for services yet to be performed for the new employers and thus cannot be considered mitigation of the losses they suffered from forfeiting remuneration that they had already earned at Merrill Lynch. Given the risk of these alleged defenses, the settlement is reasonable and within the range of possible approval.

> c.   ERISA Preemption of Claims Based on the WealthBuilder Plan

Merrill Lynch alleges that the Class Members' claims for their WealthBuilder Plan account balances are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and, therefore, that state law does not apply. Plaintiffs argue that the WealthBuilder is not an ERISA Plan, as it does not meet the ERISA requirements. Accordingly, Merrill Lynch has an alleged defense to the WealthBuilder claims of the Class Members. Given this risk, the settlement is reasonable and within the range of possible approval.

> **2.   Other Merrill Lynch Defenses Apply to Specific Claims**

> a.   Breach of Contract

Plaintiffs allege that Merrill Lynch did not follow the terms of the Plans and ATP, and instead improperly forfeited Class Members' Plans balances and ATP Bonus Payments when Class Members' employment was terminated. Plaintiffs further allege that pursuant to the

language of the Plans and ATP, Merrill Lynch was required to follow certain procedures[4] in order for a termination to be for "Cause" under the Plans and thus forfeit Class Members' Plans balances and ATP Bonus Payments. Plaintiffs contend that Merrill Lynch did not provide Class Members with the proper notice or an opportunity to be heard prior to their terminations, thus same cannot be properly for "Cause," warranting the forfeiture of Plans balances and ATP Bonus Payments. Plaintiffs allege that Merrill Lynch breached the Plans and ATP in its dealings with Class Members by failing to follow these termination procedures in order to deny payment to Class Members.

Merrill Lynch alleges that following the merger between Bank of America and Merrill Lynch, the Merrill Lynch Board of Directors dissolved, making the terms of certain Plans impossible to perform. As a result, Merrill Lynch alleges that the Merrill Lynch Board did not exist to review involuntary terminations under certain of the Plans, and Merrill Lynch alleges it implemented an appropriate and adequate substitute review process. In addition, other Plans did not have a Board review requirement. As a result, Merrill Lynch alleges that it properly followed the procedures under the Plans and ATP following Class Members' involuntary terminations, including provisions regarding notice and Merrill Lynch's review of award forfeitures following an involuntary termination, and did not breach the Plans or ATP. In addition, Merrill Lynch alleges that based upon the reason for termination, the Plans balances and ATP Bonus Payments were properly forfeited.

b. Conversion

Plaintiffs allege that Merrill Lynch has converted the Plans balances and ATP Bonus Payments of Class Members due to Merrill Lynch's failure to follow the termination procedures

---

[4] Plaintiffs contend that certain of the Plans also require notice and an opportunity to be heard, the vote of not less than three-quarters of the Board of Directors of Merrill Lynch that the termination was for "Cause" and that the ATP requires that the Class Member be given 15 days to cure the terminable conduct, to the extent curable.

of the Plans and ATP. Plaintiffs further allege that Merrill Lynch acted with the intent to convert Class Members' Plans account balances and ATP Bonus Payments and that Merrill Lynch is in wrongful possession of same despite Plaintiffs' demands for same.

Merrill Lynch alleges that Plaintiffs' conversion claims are subject to dismissal because they are duplicative of Plaintiffs' breach of contract claims. Merrill Lynch also alleges that Plaintiffs are unable to state claims for conversion under the relevant state laws because claims for conversion do not apply to employer-employee disputes over alleged unpaid compensation. Merrill Lynch further alleges that it properly terminated Plaintiffs for "Cause" and that based upon the reason for termination, Merrill Lynch's retention of the Plans amounts and ATP Bonus Payments is not conversion.

### c. Unpaid Wages

Plaintiffs allege that they were "employees" and Merrill Lynch was an "employer" within the meaning of New York labor laws. Furthermore, Plaintiffs allege that the Plans balances and ATP Bonus Payments are wages under New York labor laws that Class Members were entitled to be paid pursuant to their performance under the Plans, ATP and employment requirements.

Merrill Lynch alleges that forfeitable long-term contingent compensation, such as that awarded under the Plans and ATP, does not constitute earned wages under applicable law.

### d. Unjust Enrichment

Plaintiffs allege that during their tenure at Merrill Lynch they performed their services in good faith and that Merrill Lynch accepted Class Members' services and derived great benefit from same. Plaintiffs further allege that by improperly forfeiting Class Members' Plans balances and ATP Bonus Payments, Merrill Lynch was unjustly enriched by retaining Class Members' funds in addition to their services.

Merrill Lynch alleges that Plaintiffs' unjust enrichment claims are subject to dismissal because they are duplicative of Plaintiffs' breach of contract claims. Merrill Lynch also alleges that Plaintiffs are unable to state claims for unjust enrichment under the relevant state laws because the claims are barred by state statutes of limitations. Merrill Lynch also alleges that it properly terminated Plaintiffs for "Cause" and that based upon the reason for termination, Merrill Lynch is not unjustly enriched by its retention of Class Members' Plans balances and ATP Bonus Payments.

e. Injunctive Relief

In the Second Amended Complaint, Plaintiffs pray that Merrill Lynch implement a procedure for review of "Cause" determinations by a neutral consistent with the intent of the Plans and ATP for employees who are involuntarily terminated by Merrill Lynch in the future.

Merrill Lynch alleges that because it has not violated the terms of the Plans, absent settlement, injunctive relief is neither appropriate nor necessary.

f. Fraudulent Misrepresentation/Concealment

Plaintiffs allege that Merrill Lynch materially represented to Class Members that they would receive payments under the Plans and ATP if their employment ended following a Change in Control and they were not afforded certain rights as outlined in the Plans and the ATP. Plaintiffs further allege that Merrill Lynch intended to misrepresent or omit the fact that Class Members reasonably relied upon to believe they would receive payments under the Plans and the ATP. Plaintiffs allege that they have been damaged due to Merrill Lynch's fraudulent misrepresentations and omissions.

Merrill Lynch denies Plaintiffs' claims regarding fraudulent misrepresentation/ concealment and alleges that it did not make misrepresentations to Class Members regarding the provisions of the Plans and ATP and had no intent to misrepresent or omit facts regarding

payments under the Plans and ATP following an involuntary termination. Merrill Lynch further alleges that Plaintiffs have suffered no damage due to Merrill Lynch's alleged fraudulent misrepresentations and omissions because Merrill Lynch properly forfeited Plans awards and unpaid ATP bonus amounts following terminations for Cause.

g. RICO

Plaintiffs allege that Merrill Lynch's wrongful withholding of funds from Class Members and the fraudulent acts outlined in the Second Amended Complaint constitute a racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, United States Code, Title 18, Chapter 96, Sections 1962 and 1964 ("RICO").

Merrill Lynch denies Plaintiffs' claims that it wrongfully withheld funds from Class Members and that its actions constitute improper activity under RICO. Merrill Lynch further alleges that RICO claims are entirely inapplicable to claims for benefits under employee long-term contingent incentive compensation.

III. THE TERMS OF THE SETTLEMENT

Subject to Court approval, the parties have stipulated to class certification of the following Class:

> Individuals who: (a) were employed by Merrill Lynch in the United States on September 15, 2008; (b) participated in one or more of the Plans and/or the ATP; (c) either are employed by Merrill Lynch as of the day following the Preliminary Date (for prospective relief only) or were involuntarily terminated from employment by Merrill Lynch between January 1, 2009, and the Preliminary Approval Date; and (d) either as of the day following the Preliminary Approval Date have or at the time of their termination had unvested awards in one of more of the Plans and/or would have been eligible to receive remaining Unpaid ATP Bonus Amounts.

Class Members who: (a) were involuntarily terminated between January 1, 2009 and March 22, 2016 and were not paid [i] all of their account balances in the Plans for awards made

for production year 2008 and prior, [ii] their remaining Unpaid ATP Bonus Amounts pursuant to the ATP, and/or [iii] did not have their ATP Promissory Note balance at the time of termination forgiven; (b) subject to Paragraph 8.5 of the Stipulation, have not, on or before the Settlement Payment Date, been barred from the industry by FINRA or other regulatory body arising from or related to conduct while an employee of Merrill Lynch (regardless of when that conduct was uncovered or when investigation into that conduct is initiated); (c) subject to Paragraph 8.5 of the Stipulation, have not, on or before the Settlement Payment Date, been suspended by FINRA or other regulatory body for more than one year arising from or related to conduct while an employee of Merrill Lynch (regardless of when that conduct was uncovered or when investigation into that conduct is initiated); and (d) did not sign a release of claims for Change in Control vesting of awards under the Plans or for Unpaid ATP Bonus vesting due to a termination not for Cause where the individual or Defendants were represented by counsel for the Settling Parties in this Litigation or where the individual received greater monetary amounts as consideration for his or her release than they would have received under the Settlement Formula or have not had claims under the Plans or for Unpaid ATP Bonus vesting due to a termination not for Cause otherwise extinguished ("Monetary Relief Class Members") are eligible for the Payments to Participating Claimants. Class Members who are employed by Merrill Lynch as of March 23, 2016 ("Injunctive Relief Class Members") are eligible for the Programmatic Relief only.

Merrill Lynch provided Class Counsel with an Excel database containing the following information for Class Members: (1) identification number, (2) termination date, (3) "forfeited" FACAAP balance, (4) "forfeited" Growth Award balance, (5) "forfeited" WealthBuilder balance, (6) "forfeited" LTICP balance, and (7) "forfeited" ATP bonus payment balance. Merrill

Lynch updated the Excel database through March 22, 2016. Additionally, Merrill Lynch provided verification that such confirmatory documents and/or information produced is accurate and correct to the best of Merrill Lynch's knowledge and ability. There are no side agreements between the parties and/or their counsel.

Additionally, prior to the mailing of Class Notice, Merrill Lynch provided the Claims Administrator, Rust Consulting, with the most recently recorded name and mailing address for the Class Members, as such information is contained in employment or personnel records maintained by Merrill Lynch, including, but not limited to, name, date of birth, address, telephone number and social security number ("Class Information").

The Parties have agreed to the settlement, under which Merrill Lynch will remit an approximate Total Gross Settlement Sum of $13,292,757.36 to settle the submitted claims of the Class. Monetary Relief Class Members who submit claims are eligible to receive payment under the following Settlement Formula: Unpaid FACAAP, Growth Award, WealthBuilder and LTICP values granted in the years prior to and including 2008 are eligible to be paid as follows: (1) for Class Members who were terminated between March 5, 2009 and March 22, 2016: 75% of each participating Class Member's unpaid awards granted in the years prior to and including 2008; and (2) for Class Members who were terminated between January 1, 2009 and March 4, 2009: 37.5% of each participating Class Member's unpaid awards granted in the years prior to and including 2008. Unpaid FACAAP, Growth Award and WealthBuilder values granted in 2009 for performance year 2008 are eligible to be paid as follows: (1) for Class Members who were terminated between March 5, 2009 and March 22, 2016: 50% of each participating Class Member's unpaid awards granted in 2009 for performance year 2008; and (2) for Class Members who were terminated between January 1, 2009 and March 4, 2009: 25% of each participating

Class Member's unpaid awards granted in 2009 for performance year 2008. The ATP Bonus will be paid as follows: (1) for Class Members who were terminated between March 5, 2009 and March 22, 2016: 25% of each Class Member's unpaid ATP bonus amounts at the time of termination; and (2) for Class Members who were terminated between January 1, 2009 and March 4, 2009: 12.5% of each Class Member's unpaid ATP bonus amounts at the time of termination.

Class Members had the ability to dispute the amount of the outstanding ATP promissory note balance payable and to participate in a mediation process with Mediator Yellen to raise any legal defenses to the repayment of the outstanding ATP promissory note balance. There were several such Class Members who participated in this process to conclusion, and Merrill Lynch paid Mediator Yellen's fee associated with same. One of the opt-outs had an ATP balance.

Class Members involuntarily terminated between January 1, 2009 and March 22, 2016 who previously released claims related to the Plans and/or ATP as determined by the parties in a settlement agreement with Defendants and who received monetary consideration in connection with his or her release are eligible to receive payments under the following Settlement Formula: 31% of the Settlement Formula for Monetary Relief Class Members terminated between January 1, 2009 and March 22, 2016, less 31% of the monetary amount received as consideration for that release. Class Members who were involuntary terminated between January 1, 2009 and March 22, 2016 who previously released claims related to the Plans and/or ATP as determined by the parties in a settlement agreement with Defendants who received no monetary consideration in connection with their release are eligible to receive payments under the following Settlement Formula: 45% of the Settlement Formula for Monetary Relief Class Members terminated between January 1, 2009 and March 22, 2016.

Class Counsel also negotiated non-monetary relief going forward for current Merrill Lynch employees who may be subject to the termination not for Cause provisions of the Relevant Plans. This process includes specific written standards to be applied in the case of an involuntary termination and determinations to be made by an independent third-party.

Payment shall be made to each Class Member whose Settlement Claim Certification Form was received within ninety (90) days of the Class Notice mailing date – April 21, 2016. Class Notice was sent to the most recently recorded mailing address for each Class Member, as such information is contained in the Class Information. Prior to mailing the Class Notice, the Claims Administrator undertook a reasonable address verification measure to determine the current accuracy of the address information received from Merrill Lynch. Unless the Claims Administrator received a Class Notice returned from the United States Postal Service for reasons discussed in the following paragraph, the Class Notice was deemed mailed and received by Class Members to whom it was sent five days after mailing.

If Class Notice was returned to the Claims Administrator by the United States Postal Service with a forwarding address for the recipient, the Claims Administrator re-mailed the Class Notice to that address, and the Class Notice was deemed mailed at that point. In the event that subsequent to the first mailing of the Class Notice, and at least seven days prior to the response deadline, the Class Notice was returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, the Claims Administrator performed a standard skip trace in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator re-sent the Class Notice.

Class Members who did not wish to participate in the settlement could opt out of the settlement by mailing a written, signed statement to the Claims Administrator indicating that he or she is opting out of the monetary portion of the settlement. Class Members could not opt out of the injunctive relief provisions of this settlement. Settlement Class Members who did not opt out could also object to the settlement by filing a written objection with the Court. No Class Members filed objections and only two have opted out.

In conjunction with the instant Motion, Class Counsel will move the Court for an award of attorney's fees of 25% of the Total Gross Settlement Amount, as defined in the Stipulation, and up to $175,000.00 for costs. Class Counsel will also apply to the Court for enhanced awards for the Class Representatives in the amount of $20,000.00 each to compensate the Class Representatives for the time they spent and risk they undertook in bringing this litigation.

## IV. THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL

"[P]ublic policy favor[s] the compromise and settlement of disputes." Fed. R. Evid. 408 Advisory Committee Note. Public policy of North Carolina favors the settlement of lawsuits, including class actions. *Ehrenhaus v. Baker,* 776 S.E.2d 699, 708 (N.C. Ct. App. 2015). North Carolina law notes that "the primary objective of requiring the court's final approval of a proposed settlement in a class action suit is to protect class members 'whose rights may not have been given adequate consideration during the settlement negotiations,' and ultimately to determine whether the settlement is fair, reasonable and adequate." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 828 (E.D.N.C. 1994)*, quoting In Re Jiffy Lube Securities Litigation,* 927 F.2d 155, 158 (4th Cir.1991). In class action cases, any settlement of class claims must be approved by the District Court. Fed. R. Civ. P. 23(e). Court approval is a two-step process consisting of preliminary approval and final approval, as explained in *The*

*Manual for Complex Litigation, Fourth*:

> First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation. [. . .] If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfied the criteria set out in Rule 23(a) and least one of the subsections of Rule 23(b). The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms [. . .]
>
> [Second,] [o]nce the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members. [. . .] At the fairness hearing, the proponents of the settlement must show that it is fair, reasonable, and adequate.

*Id.* at §§ 21.632, 21.633, 21.634 (West 2004). *See also Ehrenhaus v. Baker*, 216 N.C. App. 59, 73, 717 S.E.2d 9, 19 (N.C. Ct. App. 2011).

The first step was fulfilled upon the Court's preliminary approval of the Settlement on March 22, 2016. By preliminarily approving the Settlement, the Court found that same is adequate with regard to the requirements of Rule 23(a) and (b). Based upon the Court's findings with regard to Rule 23 and the fact that nothing has changed in the case with regard to any Rule 23 requirements since preliminary approval, Plaintiffs ask the Court to finally certify that Rule 23(a) and (b) are satisfied by this Settlement. This limits the legal inquiry at this final approval stage to whether the Settlement is fair, reasonable and adequate. *Id.*

A settlement is presumed to be fair when: (1) it is reached through arm's-length negotiations; (2) the class is represented by experienced counsel; and (3) the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Here, all of the factors giving rise to the presumption of fairness exist. First, the Settlement is the product of arm's-length, non-collusive negotiations, facilitated by a well-

respected mediator. Second, the parties are represented by experienced counsel. Third, before commencing settlement negotiations, the parties exchanged a significant amount of information, both formally and informally.

Fourth Circuit case law establishes that "the fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015), *citing In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 159 (4th Cir. 1991). The factors to be considered by 4th Circuit Courts in this analysis are: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation." *Id.*

## V.     FAIRNESS OF THE SETTLEMENT

### A.     <u>Posture of the Case at Settlement</u>

The first factor of the fairness analysis to be considered is the posture of the case at the time the settlement was proposed. *Id.* The Settlement in this case was reached at a relatively early stage in the litigation, however, as the Fourth Circuit considered in *Jiffy Lube Securities Litigation*, other factors can offset relatively early timing of settlement in a case. In *Jiffy Lube*, these factors included: "plaintiffs' informal discovery, substantial concessions made by both sides, and the parties' common interest in preventing [a] bankruptcy." *In re Jiffy Lube,* 927 F.2d at 159. Given the wide range of factors considered by the Court in *Jiffy Lube*, the offsetting factors in the instant case should also be taken into consideration and are described in the following paragraph.

Counsel for Plaintiffs filed more than 100 arbitration actions on behalf of former Merrill Lynch employees related to the Change in Control vesting provisions of the Plans and the

"Cause" termination provisions of the ATP. To date, Class Counsel has reviewed in excess of approximately 700,000 individual documents comprising in excess of 6.2 million pages of information produced by Merrill Lynch, taken sworn testimony of the Plans administrators and other primary Merrill Lynch/Bank of America witnesses on several occasions, consulted with expert witnesses, arbitrated related cases to conclusion and resolved numerous Change in Control vesting claims under the Plans and ATP. The vast majority of this discovery and litigation occurred prior to the instant lawsuit being filed.

This background should significantly offset any impression that the Settlement was reached "too early" in the litigation, as counsel for Plaintiffs has more experience in prior litigation of claims pursuant to the Change in Control vesting provisions of the Plans and the "Cause" termination provisions of the ATP than any other law firm in the country, and this knowledge and experience significantly assisted the Class in obtaining the settlement.

**B.      Extent of Discovery Conducted**

In addition to the discovery outlined in the previous section of this Brief, the Parties exchanged considerable information regarding the Class Members that was utilized by the Parties in the negotiations ultimately resulting in the settlement. Defendants have produced documents and/or information necessary to analyze, value, and categorize the status of actual, potential or excluded Class Members. Information provided by Defendants includes spreadsheets reflecting date of termination, payroll data, Plan data, loan forgiveness and other data relevant to this case.

**C.      Circumstances Surrounding the Negotiations**

Class Counsel engaged in approximately six years of analyzing, prosecuting and resolving the same and similar claims against Merrill Lynch, and Mediator Yellen was involved in mediating several such disputes. The settlement in this case is the product of four full-day

mediation sessions in New York, New York conducted by Mediator Yellen, who has considerable experience in the financial services industry. Counsel for the parties are experienced class action lawyers who retained Mediator Yellen for his expertise in mediating complex legal matters as well as similar issues between Class Counsel's clients and Merrill Lynch in the past. The named Plaintiffs participated in the mediation and settlement process and they were actively involved in the negotiations that resulted in settlement.

The parties were unable to reach settlement during the four-day mediation, but continued the settlement negotiations through telephone and written correspondence overseen by Mediator Yellen thereafter. Over the course of the next three months, the parties engaged in intensive negotiations regarding the terms of the settlement until they reached a settlement on September 24, 2015, which is memorialized in the Stipulation. All of the negotiations between the parties have been adversarial, vigorous, non-collusive, and at arm's length under the supervision of Mediator Yellen.

### D.    Counsel's Class Action Experience

The Class is represented by experienced counsel that has settled numerous class actions in the financial services industry. Class Counsel have investigated, developed and pursued Change in Control cases against Merrill Lynch on behalf of former Merrill Lynch employees since 2009 and have represented more than 1,700 such individuals.

## VI.    ADEQUACY OF THE SETTLEMENT

In the Fourth Circuit, the adequacy of the settlement is based on a five-prong test laid out in *Jiffy Lube. Id.* The test states that adequacy of the settlement should be assessed based on (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the

anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Id.*

As to the first and second prongs of this test, Paragraph B of Section II of this Brief fully lays out for the Court both the Plaintiffs' Claims and Merrill Lynch's Potential Defenses. Class Counsel believes that Plaintiffs have strong claims on the merits of this issue, but also that the Defendants have provided strong defenses that are likely to be encountered if the case continues in litigation or goes to trial. Along those same lines, Class Counsel believes that as to the third prong, the duration of additional litigation would be drawn out and lengthy at great additional expense to Class Members. As to the fourth prong of this test, the Defendants are a division of a publicly traded Fortune 100 company that appears to be solvent. Finally as to the fifth prong, Class Counsel does not expect to encounter a high degree of opposition to the settlement considering: (1) the level of compensation to each Class Member will be quite high; (2) that there were no objections to the settlement; (3) only two Class Members opted out; and (4) seventy-three percent of the Class Members submitted claims.

## VII. CONCLUSION

Based upon the above, Plaintiffs respectfully request that the Court grant final approval of the settlement. The negotiations leading to settlement have been adversarial, vigorous, non-collusive, and at arm's length under the supervision of Mediator Yellen. The settlement is fair because it was reached as a result of good-faith bargaining at arm's length, without collusion, and the factors established by the Fourth Circuit in *Jiffy Lube* weigh in favor of reasonableness. Plaintiffs have attached a Proposed Final Judgment and Order of Dismissal with Prejudice (**Exhibit B**).

WHEREFORE and for the reasons set forth above, Plaintiffs respectfully request that the Court enter an order among other things: (1) granting final approval of the settlement; (2) appointing Shumaker, Loop & Kendrick, LLP as Class Counsel; (3) appointing Plaintiffs Benjamin E. Davis and Roberto F. Garcia as Class Representatives; (4) granting certification of the class described herein for settlement purposes; (5) finding that, pursuant to Federal Rule of Civil Procedure 23, the settlement is, in all respects, fair, reasonable and adequate to the Settling Parties; (6) finding that the settlement set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of the Settling Parties with the assistance of a professional mediator; (7) finding that the settlement embodied in the Stipulation is finally approved in all respects, there is no just reason for delay, and the Settling Parties are directed to perform its terms; (8) dismissing the litigation in its entirety with prejudice; (9) approving the release provisions contained in Paragraph 10 of the Stipulation; (10) finding that the Class Notice and Programmatic Relief Notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein; (11) finally approving the Programmatic Relief set forth in the Programmatic Relief Notice; (12) retaining jurisdiction over: (a) implementation of the settlement; (b) the payment of the Net Settlement Sums; and (c) all parties hereto for the purpose of construing, enforcing, and administering the Stipulation; (13) finding Defendants provided notification to all appropriate federal and state officials regarding the settlement as required by 28 U.S.C. § 1715; and (14) finding there is no just reason for delay in the entry of the Order of Final Judgment and immediate entry by the Clerk of Court regarding same.

DATED: July 29, 2016

*/s/Michael S. Taaffe*
Michael S. Taaffe (Admitted *Pro Hac Vice*)
Michael D. Bressan (Admitted *Pro Hac Vice*)

Jarrod J. Malone (Admitted *Pro Hac Vice*)
David L. Wyant, Jr. (Admitted *Pro Hac Vice*)
Shumaker, Loop & Kendrick, LLP
240 South Pineapple Ave. – 10th Floor
Sarasota, Florida 34236
Telephone:  (941) 366-6660
Facsimile:  (941) 366-3999
E-Mail:  mtaaffe@slk-law.com
*Attorneys for Plaintiffs*

*/s/Steven A. Meckler*
Steven A. Meckler
N.C. State Bar No. 26544
Shumaker, Loop & Kendrick, LLP
128 South Tryon Street, Suite 1800
Charlotte, North Carolina 28202
Telephone:  (704) 375-0057
Facsimile:  (704) 332-1197
E-Mail:  smeckler@slk-law.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of July, 2016, a true and correct copy of the foregoing document was served on the parties listed below by the Court's electronic distribution system to:

Mark A. Nebrig, Esq.
Glenn E. Ketner, III, Esq.
Moore & Van Allen, PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone:  (704) 331-1000
Facsimile:  (704) 331-1159
marknebrig@mvalaw.com
boketner@mvalaw.com

Mark S. Dichter, Esq.
Morgan Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5291
Facsimile:  (215) 963-5001
mdichter@morganlewis.com

Samuel S. Shaulson, Esq.
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, NY 10178
Telephone:  (212) 309-6718
Facsimile:  (212) 309-6001
sshaulson@morganlewis.com

S. Elaine McChesney, Esq.
Morgan Lewis & Bockius, LLP
One Federal Street
Boston, MA 02110
Telephone:  (617) 951-8501
Facsimile:  (617) 951-8736
Elaine.mcchesney@morganlewis.com


By: */s/ Michael S. Taaffe*
*/s/ Steven A. Meckler*